SEAVEY & FLARSHEIM BROKERAGE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91618.   Promulgated January 26, 1940.

*Alton Gumbiner*, *Esq.*, for the petitioner.
*William A. Schmitt*, *Esq.*, for the respondent.

200

OPINION.

KERN: The sole question before us is whether respondent erred in disallowing as a deduction from ·petitioner's gross income the $12,000 paid to Jennie Flarsheim in the taxable year.

Petitioner contends that the $12,000 in question should not be included in its gross income, but if so included it should be deducted in computing its net income, either as an expense or as exhaustion of the cost of the contract for Milton's services. The respondent contends that it is income to petitioner and is not deductible either as

an ordinary and necessary expense, or as exhaustion of a capital asset. The applicable statutes are set out in the margin.[1]

It appears from the record that Milton Flarsheim had been employed by petitioner since 1901. He was manager of its St. Louis office and performed extremely valuable services of an executive nature in relation to the whole business of petitioner. He was a man of exceptional ability and wide acquaintance in the merchandising field and brought valuable business to petitioner. Prior to 1916 he had received a salary for his services, but beginning in 1916 he received the entire net earnings of the St. Louis office, which he conducted as his own. He did not, however, have any interest in petitioner which would survive his death. In 1928 he became dissatisfied with the arrangement under which he was working and considered going into business for himself in order to accumulate an estate which could be passed on to his wife after his death. Petitioner then became faced with the possibility of losing its most valuable employee, and at the same time acquiring a most formidable competitor who was thoroughly familiar with its business methods and enjoyed a close business relationship and the confidence of some of its most valuable clients.

In this situation petitioner sought to retain Milton's services if possible, and in order to meet his requirements agreed, in addition to the compensation which he was then receiving for his services, to pay to his wife, if she survived him, $12,000 a year during her lifetime. Obviously, this was additional compensation for his services. There is no contention that the $12,000 was a gift by petitioner or that it was in excess of what Milton's services were reasonably worth. The fact that petitioner might have had other reasons for wanting to keep Milton in its employ does not affect the value of his services. That it was contingent upon Jennie outliving Milton is not material, nor is the fact that it was to be paid to Milton's nominee. The provision in the contract that it was to be paid out of the *net* earnings of the St. Louis office was merely a limitation on petitioner's liability and the amount payable in a particular year. It in no way changed the character of the payment when made.

There is no question here of the assignment of income by the earner as in *Lucas* v. *Earl*, 281 U. S. 111, and *Burnet* v. *Leininger*, 285 U. S.

---

[1] Revenue Act of 1934—

Section 22 (a) provides in part:

" 'Gross income' includes gains, profits, and income derived from * * * trades, businesses, commerce * * *; or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

Section 23 (a) provides in part as follows:

"In computing net income there shall be allowed as deductions:

"(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

136, nor is there a question of assignment of income from a trust by the beneficiary thereof, *Blair* v. *Commissioner*, 300 U. S. 5. Here the petitioner in the taxable year was engaged in the operation of a business and received the profits therefrom. It was, however, obligated under its contract with Milton to pay from these profits $12,000 to Jennie Flarsheim. Obviously, it was intended by the parties to the contract of September 13, 1928, to increase the compensation for Milton's services, and the $12,000 paid to his nominee in the taxable year was additional compensation for the services rendered by him to petitioner in prior years. The obligation to pay was incurred from year to year after the death of Milton and when net income was earned by petitioner from the operation of the St. Louis office, and not previously. The expense, therefore, can not be attributed to earlier years for it was neither paid nor incurred in those years. The liability accrued in 1934. "The statute does not require that the services should be actually rendered during the taxable year, but that the payments therefor shall be proper expenses paid or incurred during the taxable year." *Lucas* v. *Ox Fibre Brush Co.*, 281 U. S. 115; *Green Oil Soap Co.* v. *Reinecke*, 36 Fed. (2d) 599; *Edwards* v. *Keith*, 231 Fed. 110.

We hold that the $12,000 here in question was an ordinary and necessary expense, paid or incurred by petitioner during the taxable year in connection with its business and is deductible from gross income. *Lucas* v. *Ox Fibre Brush Co.*, *supra*; *Alfred Le Blanc*, 7 B. T. A. 256; *Jerecki Manufacturing Co.*, 12 B. T. A. 1165. Cf. *First National Bank of Skowhegan, Maine*, 35 B. T. A. 876; *Kornhauser* v. *United States*, 276 U. S. 145. See article 23 (a) (9) of Regulations 86, which provides:

Amounts paid by a taxpayer for pensions to retired employees or to their families or others dependent upon them, or on account of injuries received by employees, and lump-sum amounts paid or accrued as compensation for injuries, are proper deductions as ordinary and necessary expenses. Such deductions are limited to the amount not compensated for by insurance or otherwise. When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted. * * *

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MELLOTT dissents.

---

HARRON, concurring: The petitioner appears to have included in its gross income, on its return, the earnings of the St. Louis office, inclusive of the sum paid to Jennie Flarsheim. The sole question is whether petitioner is entitled to deduct in 1934 the $12,000 paid to Jennie, as a business expense.

The pleadings and the briefs submitted in this proceeding represent greatly belabored straining at theories conceived in confusion. One misdirected argument after another from counsel for one party has brought forth equally misdirected reply arguments from counsel for the other party. Counsel for each party verily misses the forest for the trees. Determination of the question turns upon the proper classification, for tax purposes, of the payment made to Jennie Flarsheim. While I concur in the result reached, I reach that result on a different ground than does the majority opinion.

The answer to the question in this case is to be found by analysis of the agreement of September 13, 1928. It is clearly a contract entered into for the purpose of retaining the services of Milton Flarsheim in the employ of petitioner. Milton agreed to remain in petitioner's employ in consideration for petitioner's agreement to pay some sum annually to Milton's widow upon his death. The liability and the amount to be paid to the widow was made contingent upon the existence of net earnings in any year of the St. Louis office; and upon the amount thereof per year; and upon whether in any prior year less than $12,000 was paid to the widow. By its specific terms, the agreement does *not* state that petitioner agreed to pay to Milton any *extra compensation* for his services at any time. It is not accurate to conclude that the sums paid to Jennie Flarsheim represented additional compensation for the past services of Milton. However, from the terms of the agreement, it is close to reality to conclude that the payments to Milton's widow represented a *pension* to her for the duration of her life. Under the facts, such is a reasonable description of the nature of the payments to the widow of an employee of petitioner. It does not affect the nature of the payments, considered as pension payments, that the amount payable per annum to Jennie was made contingent upon the amount of the net earnings of the St. Louis office. The payment of a pension and the amount thereof can be the subject of a contract.

Once the nature of the payment to Milton's widow is established to be in the nature of a pension, the matter of petitioner's right to deduct the amount paid in the taxable year pursuant to the contract is not difficult. The liability to pay the sum in question accrued in the taxable year because petitioner's liability to make the payment was contingent in each year, and in 1934 the facts determinative of the liability occurred. The expenditure was proximately connected with petitioner's business, having been made in fulfillment of an obligation under a contract entered into in connection with petitioner's business. Further, the Commissioner, by his own regulations, has ruled that amounts paid by a taxpayer for pensions to retired employees or to their families or others dependent upon them, are

proper deductions as ordinary and necessary expenses. Regulations 86, article 23 (a)–9, Act of 1934. It is reasonable to hold that the above regulation applies to amounts paid as a pension to the widow of an employee. The deduction is allowable as a business expense in the taxable year, upon the above stated grounds.