**FLARSHEIM v. UNITED STATES**
(two cases).

Nos. 13258, 13259.

Circuit Court of Appeals, Eighth Circuit.
June 24, 1946.

Rehearing Denied Aug. 1, 1946.

Milton H. Tucker, of St. Louis, Mo. (Lewis, Rice, Tucker, Allen & Chubb, James A. Singer, and Stanley H. Sicher, all of St. Louis, Mo., on the brief), for appellant.

Harry Marselli, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott, Sp.Asst. to Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

THOMAS, Circuit Judge.

These are appeals by a taxpayer from judgments for the United States in two actions brought for the recovery of personal income taxes alleged to have been erroneously and illegally collected for the years 1933 and 1934 respectively. Except as to a small difference in the amount of the taxes for each year the facts are the same in both cases. They are submitted here together and may be disposed of in a single opinion.

In her income tax returns for the years 1933 and 1934 Jennie C. Flarsheim, the taxpayer, reporting her gross income, included as received each year under Item 1:

"Salaries, Wages, Commissions,
Fees, etc. Seavey & Flarsheim Brokerage Co., Kansas City, Missouri......... $12,000.00"

She paid the resulting taxes in the amounts of $862.85 and $826.30 and thereafter filed claims for refunds thereof. The claims were denied by the Commissioner of Internal Revenue and these actions followed.

The taxpayer is the widow of Milton J. Flarsheim of St. Louis, Missouri, who died on April 27, 1931. From about 1901 until the time of his death he was, subject to the contracts referred to below, an employee of Seavey & Flarsheim Brokerage Company, a

corporation engaged in the foods brokerage business with numerous branch offices in cities throughout the middle west. Milton J. Flarsheim was employed as manager of the branch office at St. Louis until the end of 1915. Beginning with 1916 he operated the office as his own under an oral contract with the corporation, retaining all the profits and taking all the losses. While working under the oral agreement he used the corporation's name and its statistical and transportation facilities for which he paid.

In 1928 Milton J. Flarsheim, then 60 years of age, became dissatisfied with his arrangement with the corporation and contemplated cancelling his oral contract with them and going into business for himself. He was an outstanding salesman and contact man. While operating the St. Louis business as his own he performed valuable services for the corporation and procured for it many clients. As a result of negotiations a contract between him and the corporation for his continued services was entered into on September 13, 1928. The contract provided for the conduct of the business as it had been previously carried on under his management, further provided for the payment of the net earnings of the St. Louis office to him in case of his disability and that in the event of his death $12,000 in equal monthly installments be paid each year to his wife, Jennie C. Flarsheim, so long as she lived. The contract also provided that in case the net earnings of the St. Louis office in any year did not equal the sum of $12,000, the deficit would be made up in subsequent years. The provisions of the contract important in this case are set out in the footnote.[1]

[1] "Whereas, the second party has been in the employ of the first party for a period of many years, in charge and in control of their St. Louis Office, and

Whereas, the first party is desirous of having the second party continue to manage and conduct the St. Louis office of the first party, and the second party is willing to so do if monetary provision is made for the care of second party's wife for her lifetime subsequent to the death of the second party and similar provision is made for second party in the event of his disability;

Now, Therefore, in consideration of the premises, it is covenanted and agreed by and between the parties hereto as follows, to-wit:

First: That the second party will continue to manage and conduct the office of the first party in the City of St. Louis under the terms and conditions under which he has heretofore operated and conducted said office.

Second: When the second party shall, because of disability, be no longer able to operate said office, there shall be paid to the second party all of the net earnings of the St. Louis office, computed in the same manner as heretofore.

Third: In the event of the death of the said second party, there shall be paid by the first party to the wife of the said second party, Jennie C. Flarsheim, out of the net earnings of the said St. Louis office, computed as heretofore, the sum of Twelve Thousand Dollars ($12,000.00) per annum, payable in equal monthly instalments of One Thousand Dollars ($1,000.00) each, on the first day of each and every calendar month. In the event the net earnings of said St. Louis office do not total the sum of Twelve Thousand ($12,000.00) per annum, then the said Jennie C. Flarsheim shall receive all of said earnings, but nothing herein shall be construed as entitling the said Jennie C. Flarsheim to receive more than Twelve Thousand Dollars ($12,000.00) per annum, if the earnings of the said St. Louis office shall exceed said sum.

It is further understood and agreed that in the event the said Jennie C. Flarsheim shall receive less than the sum of Twelve Thousand Dollars ($12,000.00) in any one year because of the fact that the earnings of the St. Louis office for such year do not equal the sum of Twelve Thousand Dollars ($12,000.00), then and in that event, if in any subsequent year the earnings of said St. Louis office shall exceed Twelve Thousand Dollars ($12,000.00) she shall receive during such subsequent year if earned so much of the earnings in excess of Twelve Thousand Dollars ($12,000.00) as will equal the deficit between the sum of Twelve Thousand Dollars ($12,000.00) and the sum received by Jennie C. Flarsheim during any prior year, it being the intention hereby to give to the said Jennie C. Flarsheim the sum of Twelve Thousand Dollars ($12,000.00) per annum as long as she may live and as long as the total earnings during her lifetime and subsequent to the death of the said second party shall be equivalent to said sum, whether or not the earnings of the St. Louis office of first party for any particular calendar year or years shall fall below said sum."

Since its execution the contract has been performed, and since the death of Milton J. Flarsheim in 1931 the corporation has paid the appellant the sum of $12,000 each and every year. The payments received by her in 1933 and in 1934 and returned by her as income give rise to the problem presented on these appeals.

The appellant's contentions are (1) that the $12,000 received by her from the corporation in the years 1933 and 1934 did not constitute income within the meaning of § 22(a) of the Revenue Acts of 1932 and 1934; but (2) if the payments are to be construed as income under the statute, they are not taxable to her.

Section 22(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 26 U.S.C.A. Int. Rev.Code, § 22(a), reads: " 'Gross income' includes * * * gains or profits and income derived from any source whatever, * * *." Subsection (b) (2) provides that annuities to the extent stated shall be excluded. And subsection (b) (3) excludes from gross income "The value of property acquired by gift, bequest, devise, or inheritance (but the income from such property shall be included in gross income)."

Counsel for appellant recognizes that the $12,000 annual payments made under the provisions of the contract of September 13, 1928, were paid "out of the net earnings of the said St. Louis office"; but he argues that the payments did not constitute income to the appellant; and that the "net earnings" of the St. Louis office were merely a yardstick for determining the amount of the annual payments. The significant facts to which counsel directs attention are that beginning with 1916 Flarsheim operated the St. Louis office "as his own"; and that he entered into the contract in 1928 for the purpose of making "monetary provision * * * for [his] wife for her lifetime subsequent to the death of the "second party" and for himself "in the event of his disability." Appellant's conclusion is that when interpreted in the light of the foregoing facts the contract of September 13, 1928, was in effect a paid-up annuity; "that the payments received by Appellant were installments of a capital sum to which Appellant acquired her

right when the contract was entered into in 1928."

That the payments made pursuant to the contract of 1928 are not annuities within the meaning of the statute can not be doubted. In 2 Am.Jur., Annuities, § 3, annuities are distinguished from income as follows: "The grant of the income or interest of a certain fund to a beneficiary during the term of his natural life is not the grant of an annuity, but is simply a grant of profits to be earned, and although directed to be paid annually, such a direction relates only to the mode of payment, and does not change the character of the bequest. An annuity is a fixed sum * * * whereas the income from a fund * * * may vary in amount from year to year and so is necessarily uncertain."

This court had occasion to apply the foregoing rule to payments made under a contract very similar to the one here involved in Bettendorf v. Commissioner, 8 Cir., 49 F.2d 173, and the court held that the payments constituted taxable income to the beneficiary who received them. In the cited case Catherine Bettendorf sold to Joseph W. Bettendorf shares of corporate stock and Joseph agreed that during the life of Catherine he would pay to her all earnings and dividends paid to him on any of the stock. The question decided was whether the earnings of the stock constituted taxable income to Joseph or to Catherine, and the court held that the earnings so paid to Catherine were not annuities but that they constituted taxable income to her.

In the instant case the Brokerage Company was the grantor in the 1928 contract, Milton J. Flarsheim furnished the consideration and the taxpayer was a third party beneficiary. Neither the husband nor wife owned any interest in the corporation. For this reason appellant argues in substance that no income producing corpus passed to her; that the payments constituted payments of capital and that the contract was merely a means of transfer.

In support of this contention appellant cites cases holding that sums paid to eliminate competition (Clark Thread Co. v. Commissioner, 3 Cir., 100 F.2d 257; News-

paper Printing Co. v. Commissioner, 3 Cir., 56 F.2d 125), alimony paid to a divorced wife (Gould v. Gould, 245 U.S. 151, 38 S. Ct. 53, 62 L.Ed. 211), and the family allowance to a decedent's widow (Buck v. McLaughlin, 9 Cir., 48 F.2d 135) do not constitute income to the recipient. The authorities cited are not in point. In the present case the 1928 contract vested in appellant upon its execution a right to receive income derived from a particular business, an income uncertain in amount but limited to $12,000 a year during her life subsequent to the death of her husband. Her right was an equitable charge upon the business itself which a court of equity would enforce. The business was appropriated to the production of income, and the $12,000 was income when received by her. Irwin v. Gavit, 268 U.S. 161, 167, 45 S.Ct. 475, 69 L.Ed. 897; Blair v. Commissioner, 300 U.S. 5, 13, 14, 57 S.Ct. 330, 81 L.Ed. 465.

■ To sustain her contention that if the payments in question be construed as income, it was not taxable to her because it was income belonging to her deceased husband, appellant relies upon Doll v. Commissioner, 8 Cir., 149 F.2d 239; Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655, and like cases. These cases turn on the principle that title to income when produced belongs to the owner of the fund which produced it. They are not applicable to the present case. Appellant's deceased husband owned no interest in the business which produced the income. The earnings of the corporation did not belong to him after his death. His estate had no right to the earnings. The right of the appellant was derived from the 1928 contract and came from the grant of the corporation. Her right to the earnings of the corporation could be enforced by her alone. The contract was not an assignment by her husband of future income because he did not own the earnings of the corporation and he could not assign anticipated income to which he had no right or title.

For the foregoing reasons the judgments appealed from are affirmed.