## HESS v. UNITED STATES.

Civil Action No. 680.

District Court, D. Minnesota, Third Division.

Oct. 23, 1947.

136

Anthony Kane and H. V. Rhedin, both of St. Paul, Minn., for plaintiff.

Paul S. McMahon, Sp. Asst. to Atty. Gen., and Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn., for the United States.

DONOVAN, District Judge.

Plaintiff's complaint sets forth three causes of action seeking recovery of claimed overpayment of income taxes for the years 1939, 1940 and 1941, pursuant to the provisions of 28 U.S.C. § 41(20), 28 U.S.C.A. § 41(20), and 26 U.S.C., 1940 Ed., § 22(b)(2), 26 U.S.C.A.Int.Rev.Code, § 22(b)(2). Defendant, answering, denies plaintiff's right to recovery.

This matter was submitted to the Court on stipulated facts disclosing that the plaintiff, on January 1, 1925, was issued a policy of life insurance which, among other things, provided for the payment of $13,000 "upon the surrender of this Policy, to the Insured if living on the 1st day of January 1939, or to Cora A. Hess, wife Beneficiary, upon receipt of due proof of the prior death of the Insured * * * [with] Optional Modes of Settlement."

Option 1 provided for interest payments at 3½% on the $13,000 retained by the insurer, and which last amount was to be paid to his estate at death, or to a person designated by him at the end of a fixed term of years.

Option 2 provided for the payment of equal periodical instalments during a fixed term of years in amounts varying with the term, no provision being made for any further payments at the end of the term.

The annual instalment indicated for a term of ten years was $116.18 for each $1,000 of the amount to be retained by the insurer.

Option 3 (chosen by the plaintiff) provided a life income of equal annual instalments varying with the age of the payee, in periods of either ten years or twenty years. Plaintiff selected a period of ten years. The annual instalments provided thereunder at his age, i.e., sixty-five, amounted to $92.32 for each $1,000 of the $13,000 principal retained by the insurer, aggregating $12,000 for the fixed period of the ten years. This paid the plaintiff $1,200 a year.

At the time this policy was issued, plaintiff was fifty-one years of age. He was required to pay annual premiums of $976.-82 for a period of fourteen years. Pursuant to the terms of the policy, plaintiff, on February 26, 1937, elected settlement, in the event the policy matured during his life, under Option 3, which directed:

"That the amount payable under the said policy, in the event it matures as an Endowment, shall be retained by the Company and paid out to me in accordance with the provisions of Option Three of the 'Modes of Settlement' as hereinafter provided and the said payment to be made on the basis of monthly instalments of $100.00 each, for a fixed period of ten years and for so many years longer as I shall survive, the first payment being payable on January 1, 1939."

By the election instrument the plaintiff further directed:

"* * * that I shall have the right to commute at any time any unpaid instalments for the fixed period of years specified; such commutation shall, however, in nowise operate as to payments conditional upon my surviving the term during which the instalments certain would have been payable.

On January 1, 1939, the policy matured, and plaintiff surrendered it in accordance with its terms. In accord with his election he was given in lieu thereof a "Supplementary Contract" which recited the insurer's obligation to plaintiff with respect to the principal retained by it, and promis-

ing to pay plaintiff "an annual instalment in equal monthly payments of One Hundred Dollars ($100.00) each, such monthly instalment payments to be made for a fixed period of ten years * * * the last of such monthly instalment payments shall be payable on the first day of December, 1948"; and further obligated the insurer as follows:

"In the first day of January, 1949, if the Payee [plaintiff] shall be then living, and on each subsequent first day of January on which the Payee shall be living, the Payee shall become entitled to an annual instalment which shall be payable to the Payee in twelve equal monthly payments of One Hundred Dollars ($100.00) each, such monthly instalment payments to be payable on the first day of each month, beginning on the first day of January, 1949."

It is conceded that plaintiff paid said fourteen annual premiums, totaling $13,-675.48, and that dividends have been received by him during this period in the total sum of $1,998,36, leaving a net amount of $11,677.12.

For the year 1939 plaintiff received $1,-200. He received the same amount in 1940. He did not include any part of said payments as taxable income in the tax returns he filed for those years. For the year 1941, plaintiff reported the $1,200 received from the insurer in his tax return.

The parties are agreed that the annual payments to the plaintiff were received by him under "an * * * endowment contract." It is undisputed that the statutory formula was applied by the Commissioner, and that plaintiff had not realized a return of his cost prior to the termination of the tax period.

The Commissioner of Internal Revenue determined that these annual payments of $1,200 constituted "amounts received as an annuity" within the meaning of the applicable statute, and that 3% of $11,677.-12, the total cost of the policy, or $350.-31, was taxable income each year, in accordance with the statutory formula. Plaintiff claims this is a tax on his capital.

The question for determination in the present case is whether the payments constitute annuities, within the meaning of the governing statute.

The solution of the problem presented depends upon statutory construction of section 22(b)(2) of the Revenue Act, 26 U. S.C. 1940 Ed., 26 U.S.C.A. Int.Rev.Code, § 22(b)(2), which reads as follows:

"Sec. 22. Gross income.

*     *     *     *     *     *

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *

"(2) Annuities, etc. Amounts received (other than amounts paid by reason of the death of the insured and interest payments on such amounts and other than amounts received as annuities) under a life insurance or endowment contract, but if such amounts (when added to amounts received before the taxable year under such contract) exceed the aggregate premiums or consideration paid (whether or not paid during the taxable year) then the excess shall be included in gross income. Amounts received as an annuity under an annuity or endowment contract shall be included in gross income; except that there shall be excluded from gross income the excess of the amount received in the taxable year over an amount equal to 3 per centum of the aggregate premiums or consideration paid for such annuity (whether or not paid during such year), until the aggregate amount excluded from gross income under this chapter or prior income tax laws in respect of such annuity equals the aggregate premiums or consideration paid for such annuity."

At the outset it should be emphasized that a finding by the Commissioner of Internal Revenue is presumptively correct. Welch v. Helvering, Commissioner, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. The burden of proof is on plaintiff to establish his contention that the amounts received by him from the insurer are not annuities and hence not taxable.

What did Congress intend to include in the term "annuity" as used in the quoted statute? The controlling word has been variously defined. See 1, Bouv.Law

Dict., Rawle's Third Revision, p. 201; Black's Law Dictionary, Third Edition, p. 115; Vol. 3. Words and Phrases, Perm. Ed., p. 487, defines the term as being "* * * generally understood as an agreement to pay a specified sum to the annuitant annually during his life," citing State ex rel. Thornton v. Probate Court, etc., 186 Minn. 351, 243 N.W. 389, 391. The word "* * * has been the cause of puzzlement of mind, and there is a wealth of embarrassment in the decisions of the courts." 3 C.J.S., Annuities, § 1, page 1373.

■ The label applied to the agreement between the insurer and plaintiff need not be determinative of its character. Stearns Co. v. United States, 291 U.S. 54, 61, 54 S.Ct. 325, 78 L.Ed. 647. The Court is concerned with the substance of the transaction rather than the form.

In the case of Commissioner, etc., v. Meyer et al., 6 Cir. 139 F.2d 256, at page 259, the Court points out the difficulty confronting the taxpayer, saying:

"It is sometimes difficult to determine whether receipts represent in whole or in part capital returned and in such cases rules of approximation are applied in determining taxable income. Names are but the arbitrary marks of conceptions and the phrase 'an annuity under an annuity or endowment contract' as used in the present statute must be construed in the setting of its statutory purpose and in the light of the Sixteenth. Amendment. It was clearly the purpose of the Congress, under this statute, to exclude from income the return of capital invested and for this purpose the statute adopts a rule of approximation.

*     *     *     *     *     *

"There is no actuarial testimony in the record, but we may take judicial notice of the fact that all of the sum paid to respondent was not interest because the percentage return was far in excess of that ordinarily earned on the investments of insurance companies."

■ That plaintiff had no intention of evading the payment of any lawful tax is obvious from the record of the instant case. The meaning of "annuities" as used in the applicable statute is "difficult to determine

* * * [and] must be construed in the setting of its statutory purpose." Id. If further clarification is necessary the remedy lies in the legislative field. The trial court must accept the statute as it is, and use it as the yardstick to be applied to the facts of the case at bar. Thus measured, does the record warrant the conclusion reached by defendant?

■ It is not necessary for the Court to find that the Commissioner's finding is the only reasonable one, or the result the Court would reach had the question been first presented in judicial proceedings. To sustain the Commissioner's interpretation the Court need only find that it has "warrant in the record" and a "reasonable basis in law." Unemployment Comm. v. Aragan, 329 U.S. 143, 153, 67 S.Ct. 245, 250.

The case most strongly relied upon by plaintiff is George H. Thornley et al. v. Commissioner, 2 T.C. 220. The amount retained by the insurer in the Thornley case was less than the cost of the policy to date of surrender. The Court there points out the general understanding of the various options in this case, saying:

"According to our understanding, practically all insurance companies offer to the payee the same or similar classes of options under which to receive the proceeds of policies. It is a reasonable conclusion, therefore, that Congress used the phrase 'amounts received as an annuity' with the knowledge that insurance companies distinguish certain kinds of payments, called annuity payments, from other kinds of payments which are computed *without* reference to life expectancy and mortality tables." (Emphasis supplied.)

■■ The record of the case at bar impresses me that plaintiff elected to be paid annual instalments, based on a computation with reference to age, "life expectancy and mortality tables." While there is an absence of actuarial evidence here, the Court will take judicial notice of standard life and annuity tables for the purpose of determining whether the return to plaintiff in this case constitutes taxable income or is tax-free capital. Commissioner, etc., v. Meyer et al., supra. Had plaintiff in the present case chosen the option that cor-

responded to those selected by Thornley, the cited case would be more in point. There are other distinguishing features between the two cases, but the one discussed appears sufficient. The confusion arising out of the different definitions of the controlling term, "annuity", suggests the equities are on the side of plaintiff. Provisions for exemptions from gross income, however, do not "turn on general equitable considerations * * * and only as there is clear provision therefor can any particular deduction be allowed." Deputy v. Dupont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416. Provisions of the Revenue Acts for deductions from taxes are to be strictly construed. Equitable Life Assur. Society v. Commissioner, 321 U.S. 560, 564, 64 S.Ct. 722, 88 L.Ed. 927.

The question presented is a close one, but as I view the facts in the case at bar, the exercise of plaintiff's right under the policy he surrendered to receive the annual payments under Option 3 was at best a payment or consideration for the purchase of an annuity.

The record of the present case, in my opinion, does not overcome the presumption that defendant's findings were correct.

Defendant may submit findings of fact, conclusions of law, order for, and judgment.

An exception is allowed to plaintiff.