LOUISE K. APRILL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20091. Promulgated November 8, 1949.

*Ed. J. deVerges, Esq.*, for the petitioner.
*Donald P. Chehock, Esq.*, for the respondent.

708

710

OPPER, *Judge*: Our ultimate finding of the gratuitous character of the amounts paid to petitioner by the corporation which her husband had directed disposes in her favor of the only adjustment in issue.

Under either theory by which respondent opposes exclusion of the payments, the present inquiry must be directed to the purpose which motivated the corporation in making them. *Bogardus* v. *Commissioner*, 302 U. S. 34. Any services for which compensation could have been intended must have been those of petitioner or her husband. We can not perceive even a remote connection between the payments and services rendered by petitioner, who began employment only after all the payments in issue had been made. "When an allowance is paid by an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient." I. T. 3329, 1939-2 C. B. 153, *supra*. And no obligation of any kind existed to compensate petitioner further for her husband's past services. Cf. *Brayton* v. *Welch* (U. S. Dist. Ct., Mass.), 39 Fed. Supp. 537.[1]

The facts that the corporate resolution referred to the payments as "in recognition of his [Anthony Aprill's] services," cf. *Thomas* v. *Commissioner* (C. C. A., 5th Cir.), 135 Fed. (2d) 378, with *Blair* v. *Rosseter* (C. C. A., 9th Cir.), 33 Fed. (2d) 286, and that Frerichs deducted the payments as salary expense on its books and in its returns (which incidentally was disallowed), see *Willkie* v. *Commissioner* (C. C. A., 6th Cir.), 127 Fed. (2d) 953; certiorari denied, 317 U. S. 659; *Noel* v. *Parrott* (C. C. A., 4th Cir.), 15 Fed. (2d) 669; certiorari denied, 273 U. S. 754, are satisfactorily explained by the desire of its officers to comply with I. T. 3329, in which identical language was used and identical treatment authorized.

Respondent's contention that the payments were distributions of profits similarly fails of factual support. His theory is that the bonuses paid to Boh and the payments to petitioner were parts of a plan to distribute profits. But the bonuses to Boh are shown by the evidence to have been actual earned compensation in accordance with a practice which antedated the existence of the corporation and in fact of Boh's status as a stockholder. The practice continued after the payments to petitioner ceased. And since we can not find that his bonuses were in the nature of a distribution of profits, it is unreason-

---

[1] "* * * and the form of the payments, i. e., to the estate of the deceased *and not members of the family,* point to the conclusion that the directors, in making the payments, intended them as additional payment for faithful services already performed by the deceased * * *"

able to assume that he as a stockholder would have acquiesced in the distribution of the corporation's profits to his fellow stockholder without insisting on the receipt of his aliquot share. Cf. *Golfro Realty Corporation*, 20 B. T. A. 426; *General Water Heater Co.*, 14 B. T. A. 4; affd. (C. C. A., 9th Cir.), 42 Fed. (2d) 419. This seems to us adequately to dispose of the hypothesis that the payments to either petitioner or Boh constitute a disguised dividend.

*Decision will be entered under Rule 50.*