**Pansy W. FISHER and William G. Brown, Jr. and Richard B. Fisher, as executors under the will of Russell T. Fisher,**

v.

**UNITED STATES of America.**

**Civ. A. No. 54–253.**

United States District Court,
D. Massachusetts.

March 30, 1955.

Withington, Cross, Park & McCann, Edward C. Park, Charles E. Gennert, Boston, Mass., for plaintiff.

Anthony Julian, U. S. Atty., Arthur I. Weinberg, Asst. U. S. Atty., Boston, Mass., for defendant.

FORD, District Judge.

Plaintiffs in this action, the widow and the executors under the will of Rus-

sell T. Fisher, seek to recover income taxes alleged to have been illegally assessed on amounts received in the year 1951 by Pansy W. Fisher, widow of Russell T. Fisher, which she contends were gratuitous payments made to her.

Russell T. Fisher had been for many years president and secretary of the National Association of Cotton Manufacturers until his retirement due to illness in 1950. In the year preceding his retirement, his compensation, attached to the office of secretary, was at the rate of $20,000 per year. Subsequent to his retirement, on November 3, 1950, the Board of Government of the Association adopted the following resolution:

"Voted: That Mr. Russell T. Fisher's retirement compensation be and hereby is set at the rate of $8,000 per annum for the period from October 1st, 1950 to October 1st, 1951 * * *."

Accordingly, Mr. Fisher was paid the sum of $666.66 each month until his death on April 24, 1951.

On June 15, 1951, at the next meeting of the Board of Government following Mr. Fisher's death, the Board adopted resolutions paying tribute to Mr. Fisher's years of service, and then passed the following resolution:

"Voted: That the Treasurer is hereby authorized to pay to Mrs. Russell T. Fisher the sum of $666.66 per month for the months of May through September, inclusive, 1951, this being the balance of the retirement compensation voted by the Board of Government to Mr. Fisher on November 3, 1950."

These payments were made to Mrs. Fisher in the total amount of $3,333.36. Mrs. Fisher in the income tax return for 1951 filed jointly with her deceased husband's estate did not report this sum as income, although in an attached statement she gave information as to its receipt. The Internal Revenue Service later determined this amount to be taxable income, and assessed an additional tax which she paid and now seeks to recover, on the ground that the payments

to her were a non-taxable gift under the provisions of 26 U.S.C.A. § 22(b) (3).

In the records of the Association the payments to Mr. Fisher in 1950 and 1951 under the resolution of November 3, 1950 were entered on payroll cards as salary in the same manner as his salary before retirement, and income tax withholdings were made therefrom. After his death the sums paid to Mrs. Fisher were entered on the same card. No tax withholdings were made from these payments, and the card bears a notation that counsel had advised that the Association was not required to make such withholdings. There was no evidence as to when or by whom this notation was made. The bookkeeper who made the payroll card entries testified that no one had ever given her any instructions as to how the payments to Mrs. Fisher were to be recorded. In the Association's Form 990 information return to the Internal Revenue Service for 1951, the payments to Mrs. Fisher were included in the total of one of the items representing wages or compensation paid during the year.

Mrs. Fisher herself was never employed by the Association either before or after her husband's death, and at no time did she herself render any service to the Association.

The National Association of Cotton Manufacturers is a voluntary trade association which is tax-exempt under 26 U.S.C.A. § 101. It has no stockholders or capital stock, and its income is derived from dues paid by its members, who are corporations or individuals within the cotton manufacturing industry. The Association is managed by an eighteen-member Board of Government elected annually.

William F. Sullivan is now the president and secretary of the Association, having been elected in 1950 to succeed Fisher. He presided at the meetings of the Board of Government on November 3, 1950 and June 15, 1951, and drafted the language of the resolutions adopted at those meetings. He testified that he himself at the time of the June 15, 1951 meeting did not have in mind the ques-

tion of whether the payments to Mrs. Fisher would be taxable income, or the question of whether they were intended to be a gift or compensation for Fisher's past services, and that there was no discussion of these questions by the Board of Government at that time. While Sullivan testified that he had considered Mrs. Fisher's economic situation in June, 1951, he did not state what that situation then was or what part it played in his decision.

■■ The question here is whether the payments to Mrs. Fisher were a mere gift or gratuity and therefore non-taxable, or were compensation for the past services rendered by Fisher to the Association and hence taxable income to the recipient. This depends on the intention of the employer in making the payments. Fisher v. Commissioner of Internal Revenue, 2 Cir., 59 F.2d 192. A payment may be compensation for services if so intended by the employer even though the employer has already paid the compensation contracted for and is under no legal obligation to make any further payment. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 730, 49 S.Ct. 499, 73 L.Ed. 918; Bausch's Estate v. Commissioner of Internal Revenue, 2 Cir., 186 F.2d 313, 314. Cf. Wallace v. Commissioner of Internal Revenue, 5 Cir., 219 F.2d 855.

There is no helpful direct evidence as to what the intention of the Board of Government was in this case. Sullivan's testimony is confined chiefly to what he himself thought at the time, and at best is only negative, indicating no more than that the Board members were not explicitly thinking of whether or not a gift was being made. Hence, the intention must be gathered from the surrounding circumstances. Willkie v. Commissioner of Internal Revenue, 6 Cir., 127 F.2d 953, 955.

There was no evidence that there was anything in Mrs. Fisher's economic situation that would lead the Board to make her a gift. Her husband had been receiving a salary of $20,000 a year until a few months before his death, and payments at the rate of $8,000 a year after retirement until his death. His will left his entire estate to her. At the time of his death the matter of payments to him under the Association's retirement plan had not been settled, but the minutes of the Board's June 15, 1951 meeting show that by then an agreement as to the making of these payments to Mrs. Fisher had been satisfactorily arranged.

In view of the fact that the Board members were not thinking specifically of the tax consequences to Mrs. Fisher, the wording of the June, 1951, resolution on the treatment of the payments in the Association's books and tax return is not conclusive. However, these factors all indicate that the payments to Mrs. Fisher were looked upon as compensation. Certainly there is nothing to indicate that in June, 1951, anyone expressly regarded these payments as being a gift.

In some cases significance has been given to the question of whether or not the payments had been ratified by the stockholders of the corporation, in the view that while the directors of the corporation had authority to vote additional compensation only the stockholders could give away the money of the corporation. This is of little help here, since the Association has no stockholders. Sullivan's testimony indicates that the entire management of the Association was in the hands of the Board of Government. Similarly, little light is thrown on the question by the Association's treatment of these payments in its own tax return, since it is tax-exempt, and hence it made no difference to the Association itself whether these payments were compensation or a gift.

Considering the whole situation involved here, it appears that what took place is this. On Fisher's retirement the Board of Government voted to pay him additional compensation for his past services in the amount of $8,000 to be paid in monthly instalments over the ensuing year. When Fisher died before all this compensation had been paid, the Board simply voted to pay to the wid-

ow what it had already voted to pay and would have paid in due course if Fisher had lived. There is no convincing ground for finding that they intended to do anything except what they quite simply and clearly stated in their resolution. They were voting to pay to Mrs. Fisher "The balance of the retirement compensation voted by the Board of Government to Mr. Fisher on November 3, 1950." The payments were still meant to be what they had been intended to be in October, 1950, compensation for Fisher's past services. As such they were taxable income to Mrs. Fisher.

Plaintiff relies on I.T. 3329, 1939–2 Cum.Bull. 153, as holding that "When an allowance is paid by an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient." This was modified in 1950, however, by I.T. 4027, 1950–2 Cum.Bull. 9, which provides that the essential factor is not whether services were rendered by the recipient but whether services were rendered to the employer. So far as I.T. 4027 holds that payments may be compensation if made in consideration of services to the payor, even though these services were rendered by someone other than the recipient, it is merely declaratory of existing law. Bausch's Estate v. Commissioner of Internal Revenue, supra; Varnedoe v. Allen, 5 Cir., 158 F.2d 467. Plaintiff seems to interpret I.T. 4027 as holding that such payments are necessarily compensation and not gifts, regardless of the employer's intention, and argues that it is to that extent invalid. It is not necessary to pass on this contention, since the finding here is that the Association intended the payments to Mrs. Fisher as compensation and not as a gift.

Plaintiff relies also on the cases of Hahn v. Commissioner of Internal Revenue, 13 T.C.M. 308, C.C.H. Dec. 20,-249(M); MacFarlane v. Commissioner of Internal Revenue, 19 T.C. 9, and Aprill v. Commissioner of Internal Revenue, 13 T.C. 707. All three of these, of course, rest upon findings based on the facts of each case. In both Aprill and MacFarlane there was an express finding that the directors in voting the payments acted in reliance on I.T. 3329, supra, and intended to make payments which under that ruling would be tax free to the recipient. The facts in Hahn more closely parallel the present case. There is, however, a significant distinction. In Hahn the employee continued to work for the employer until his death, and the payments made to the widow were then considered for the first time. Here Fisher had retired and the Association had voted to pay him a definite sum over the course of a year as compensation. When he died within the year, it was simply voted to pay the unpaid balance of that compensation to his widow.

Judgment for defendant. No costs.