386 P.2d 896

**Eleanor F. FITZPATRICK, Plaintiff,**

**v.**

**The STATE TAX COMMISSION of Utah, Defendant.**

**No. 9819.**

Supreme Court of Utah.

Nov. 18, 1963.

Henriod, C. J., dissented.

Van Cott, Bagley, Cornwall & McCarthy, David E. Salisbury, Malcolm D. Pike, Salt Lake City, for plaintiff.

A. Pratt Kesler, Atty. Gen., M. Reed Hunter, Asst. Atty. Gen., for defendant.

CROCKETT, Justice.

Eleanor F. Fitzpatrick seeks review of an income tax deficiency assessed against her by the State Tax Commission for the year, 1960. The subject matter of the tax in question is payments to plaintiff from the Kearns-Tribune Corporation, her deceased husband's employer, under a contract by which it agreed to make certain payments to him, or in the event of his death, to his wife, the plaintiff.

John F. Fitzpatrick was for many years the President and General Manager of the corporation. The contract referred to was made in June, 1960, in contemplation of his retirement or semi-retirement. He was to continue in his position until January 1,

1962, after which he was to be relieved of his active role as President, but was to remain in an advisory capacity to the corporation, its officers and directors. It recited that in consideration of past and future services, the corporation would pay him the sum of $25,000 per year for 10 years. But if he should die within that time, the same payments would be made to his wife, the plaintiff herein, for the remainder of the 10-year period.

Mr. Fitzpatrick died on September 11, 1960, before any payments were made under the contract. In accordance with it, the employer then began paying plaintiff installments of $2,083 per month. She thus received four monthly payments totalling $8,332 during 1960. This controversy has arisen because she did not include this in her Utah income tax return for that year; whereas, the Tax Commission insists that she should have done so. A complicating circumstance exists because in connection with the probate of Mr. Fitzpatrick's estate the present actuarial value of these future payments to Mrs. Fitzpatrick (appoximately $200,000) was included as an asset of the estate and inheritance tax was paid, and was accepted by the defendant Tax Commission, on that basis.

In contending that the payments are not income, the plaintiff argues that this contract giving her the right to receive them is a paid-up annuity; and/or that it is an asset acquired by her husband which comes to her as part of his estate; and that the Tax Commission having accepted inheritance tax on the estate on that basis, it is now precluded from taxing the payments as income to her.

First, it should be stated that the fact that there may have been an erroneous assumption that the present value of the future payments was an asset of the estate and inheritance tax paid and accepted on that basis cannot change the true character of these payments and does not now preclude a correct determination as to whether such payments in fact constitute income.[1] Whether they are such is to be determined from the intent of the parties in arranging for the payments as shown by the background and attendant circumstances.[2]

The fact of controlling importance is that it is clear from the contract that these payments to the plaintiff were to be made in consideration of personal services rendered, and promised to be rendered, by the plaintiff's husband; and were not to be

1. Cf. Olson Constr. Co. v. State Tax Comm., 12 Utah 2d 42, 361 P.2d 1112.
2. Fisher v. United States, 129 F.Supp. 759 (D.C.Mass.1955); Hubert v. Com. of Internal. Revenue, 212 F.2d 516 (5th Cir. 1954); Nickelburg v. Com. of Internal Revenue, 154 F.2d 70 (2nd Cir. 1946); Hooker v. Hoey, 27 F.Supp. 489 (S.D.N.Y.1939), aff'd. per curiam, 107 F. 2d 1016 (2nd Cir. 1939); Brayton v. Welch, 39 F.Supp. 537 (D.C.Mass.1941).

made as a result of any investment of capital.

The agreement recites that Mr. Fitzpatrick had performed services for the corporation far exceeding in value the compensation which he received; and that because of his reputation, contacts and ability, he would be able to perform valuable services for it as long as he lived; and that because it desired to continue to receive the benefits of his service, it agreed to make these payments to him, or, if he died, to his wife. The latter fact is significant. This is not a situation where, in the event of his death, the payments were to be made to his estate and thence to his wife. The agreement expressly states that the corporation has no liability to his estate, and that the payments are to be made to the plaintiff.

Insofar as we have been able to find from our research, the authorities uniformly hold that payments pursuant to a contract for personal services constitute income to the recipient; and that there is a presumption that additional payments provided for in such a contract are further compensation for services and are, therefore, income.[3] Furthermore, the cases which have passed upon the point hold that payments made to a third person in consideration of an employee's services represent income to the one who receives the payments.[4] More specifically applicable to the instant situation are cases which hold that, absent a gift clearly established, payments made to the widow in connection with services of a deceased employee, are income taxable to her.[5] That conclusion is not dependent on performance of the services by the recipient, but upon the fact that the payments were made as a quid pro quo for services performed by someone.[6]

A situation very similar to the instant one was dealt with in Flarsheim v. United States.[7] A contract was executed between the employer company and one of its executives, whereby he would receive certain benefits in return for services rendered in the case of his disability, and in the event of his death, the company would pay $12,-000 per annum in equal monthly installments

3. Van Dusen v. Com. of Internal Revenue, 166 F.2d 647 (9th Cir. 1948); Poorman v. C. I. R., 131 F.2d 946 (9th Cir. 1942).
4. See Simpson v. United States, 261 F.2d 497 (7th Cir. 1958); Varnedoe v. Allen, 158 F.2d 467 (5th Cir. 1946); Fisher v. United States, 129 F.Supp. 759 (D.C. Mass.1955).
5. Simpson v. United States, 261 F.2d 497 (7th Cir. 1958); the employer followed a plan of making payments to widows because of its interest in retaining good executives. Flarsheim v. United States, 156 F.2d 105 (8th Cir. 1946); Packard v. United States, 179 F.Supp. 508 (1959); Varnedoe v. Allen, 158 F.2d 467 (5th Cir. 1946); Fisher v. United States, 129 F.Supp. 759 (D.C.Mass.1955); Cf. Bausch's Est. v. C. I. R., 186 F.2d 313 (2nd Cir. 1951); Weaver Bros. v. Dist. of Columbia, D. of C.C.C.H. Tax Reporter 1200–022 (1962).
6. See cases cited in note 4, supra.
7. 156 F.2d 105 (8th Cir. 1946).

to his widow so long as she lived. The widow argued that the contract represented a paid-up annuity, the installments of which were capital to which she acquired her right under the contract. In the alternative she argued that if the payments were income, they were income to her husband and should not be taxable to her. While this case differs from the present one in some particulars, the following seems pertinent. It was held that the payments were not capital but income, and that they were income to the widow and not to her husband. The latter point was based upon the facts that the plaintiff did not receive her right from her husband's estate, but under a contract which she could enforce directly against the corporation, just as in the present case the contract is made directly in favor of plaintiff and specifically states that the corporation shall bear no liability to the estate of Mr. Fitzpatrick.

■ Seavy & Flarsheim Brokerage Co. v. Commissioner of Internal Revenue [8] is a sequel to the above case. The same contract was the subject of the litigation, and the question was whether the corporation, obligated to make the $12,000 payments to the widow, could take a tax deduction for ordinary and necessary business expenses paid, including salaries and other compensation for personal services rendered. The

corporation was allowed the deduction. It is again significant to note the parallel to the instant case: it is shown that the employer corporation also deducted these payments to plaintiff on its tax forms as compensation paid, which evinces its intent and understanding that the payments were for services rendered and to be rendered it.

■ The argument that the plaintiff's right to receive these payments constitutes an annuity is grounded upon Section 59-14-4(2) (b) U.C.A.1953, which states:

"(2) The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *

"(b) Amounts received, other than amounts paid by reason of the death of the insured * * * under a life insurance, endowment or annuity contract; but if such amounts * * * exceed the aggregate premiums or consideration paid * * * then the excess shall be included in gross income."

She argues for a very general interpretation of the above section: that the words, "life insurance, endowment, and annuity contract," should be read to encompass *all* periodic payments made pursuant to a contract for a specified term. We are aware that the word "annuity" has often been used as having a very general meaning.[9]

---

8. 41 B.T.A. 198 (1940).

9. This portion of our statute is identical to the federal provisions, 26 U.S.C.A. 22 (b), 1940 Edition.

But the term "annuity" as used in income tax statutes necessarily has the specialized meaning given by the context of the particular statute. It is apparent from the wording of the section just quoted that the annuity exempted from income tax is one for which "premiums or other consideration" has been invested to purchase the annuity. The capital so invested presumably would have been taxed as income when it was first received and should not be subjected to income tax again. In the instant case, there having been no investment of capital, the payments under the contract would not come within the exemption of annuities provided for in that section.[10]

In that connection we see no merit in the plaintiff's contention that the inheritance tax she has paid should be regarded as "premiums or consideration" paid for this income. Plaintiff's right to these payments came by virtue of the contract to pay for her husband's services, and her right to receive them became absolute before any inheritance tax was assessed, and without regard to any contingency as to the payment of such tax. The

tax was not paid to, nor did it benefit, the company, but was imposed by the sovereign on different principles. Therefore, the tax cannot be viewed as a premium or consideration paid for the contract.

The holdings of the cases we have referred to herein are in harmony with and are supported by our broad and inclusive statutory definition of income contained in Section 59–14–4(1), U.C.A.1953:

"(1) Gross income includes gains, profits and income derived from salaries, wages or compensation for personal service * * * in whatever form paid * * * *derived from any source whatever*. (Emphasis added.)

Under that wording, there is no requirement that the income be for services performed by the recipient herself. Accordingly, these payments for personal services rendered and promised to be rendered by plaintiff's husband would be income to her.[11] It is pertinent to observe that in conformity with the authorities referred to, and the conclusion we have reached, federal income tax is admittedly being paid on these payments as income to the plain-

---

10. Cf. cases under the federal statute which have so held; Jones v. C. I. R., 2 T.C. 924 (1943); Hess v. United States, 74 F.Supp. 135 (1947); Frank H. Mason Trust v. C. I. R., 136 F.2d 335 (6th Cir. 1943); Hooker v. Hoey, 27 F.Supp. 489 (S.D.N.Y.1939), aff'd. per curiam, 107 F.2d 1016 (2nd Cir. 1939); Wolfe v. C. I. R., 8 T.C. 689 (1947).

11. In re Clark's Estate, 10 Utah 2d 427, 354 P.2d 112, relied on by plaintiff, provides no support for her position. The deceased had made contributions from his salary and the accumulations were refundable upon his death and were held to be part of his estate.

tiff. Any other construction could well create a situation where a man might work for someone under a contract that payments would be made to his wife and income tax be avoided entirely on the ground that he received no income and she performed no services for the money received.

We agree, of course, that it would be unfair and amount to double taxation to impose inheritance tax on the value of this contract as a part of the estate and then impose income tax upon the payments as they are received. Inasmuch as the payments are income, they should be taxed on that basis; and inheritance tax should not have been collected on the value of the contract as an asset of the estate. Accordingly, even though difficulties will be involved, fair dealing with this taxpayer requires the making of whatever adjustment is necessary to achieve fair and accurate taxation upon the correct classification of the payments as they are received as income, and not as an inheritance. It is so ordered. No costs awarded.

McDONOUGH, CALLISTER, and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent. Whether the case presents an income or inheritance tax problem, fact is the latter tax was imposed, acquiesced in and exacted by the Commission, and it was paid. Without any offer of refund, the Commission has changed its position and chooses another theory to collect another tax. Under such circumstances, there would seem to be no justification statutorily, constitutionally, or otherwise to take such a position, where by mutual agreement one tax base was employed, resulting apparently, in a situation where the taxpayer cannot protest the first tax, which he could have done had the Tax Commission taken its present position simultaneously with that taken in the first place. Taxpayers already are overburdened not only with taxes themselves, but by confusing tax legislation that in this case apparently was confusing to the Tax Commission itself. It seems to me that if tax officials apply the wrong tax in the first instance, but change their theory, no matter how innocently the confusion came about, either they should tender a refund of the first tax paid, with interest, or hide their light under the proverbial bushel. Fairness is fairness, and no departure therefrom should be indulged because the subject matter is "taxation."

A good argument could be advanced that the situation here constitutes an annuity and thus not taxable at all. However, plaintiff was content to pay an inheritance tax, and this writer thinks that the imposition of such tax *or* an income tax should suffice under the circumstances of this case,—but not both.