Rubber Associates, Inc. v. Commissioner.
Rubber Associates, Inc. v. Commissioner
Docket No. 91471.
United States Tax Court
T.C. Memo 1963-121; 1963 Tax Ct. Memo LEXIS 221; 22 T.C.M. (CCH) 567; T.C.M. (RIA) 63121; April 30, 1963
James M. Hinton, Esq., 1014 First National Tower, Akron, Ohio, for the petitioner. Thomas J. Moroney, Jr., Esq., for the respondent. TRAIN
Memorandum Opinion TRAIN, Judge: Respondent determined deficiencies in the income tax liability for petitioner for the calendar years 1957 and 1958 in the amounts of $12,793.30 and $5,026.09, respectively. The sole issue is whether petitioner can deduct certain payments made in the taxable years 1957 and 1958 to the widows of two former officer-stockholders. All of the facts have been stipulated. The petitioner, Rubber Associates, Inc., is an Ohio corporation with its principal place of business in Akron, Ohio. For the calendar years 1957 and 1958, petitioner *223 filed its Federal income tax returns with the district director of internal revenue, Cleveland, Ohio, on an accrual basis of accounting. Petitioner was incorporated on March 1, 1953. Petitioner had 25 shares of stock outstanding which was owned in equal amounts by H. D. Glass (hereinafter referred to as Glass), H. G. Bowie (hereinafter referred to as Bowie), E. C. Brueggeman (hereinafter referred to as Brueggeman), T. E. Brouse (hereinafter referred to as Brouse), and R. O. Brasaemle (hereinafter referred to as Brasaemle). The foregoing individuals were petitioner's only officers and constituted the board of directors. On April 25, 1953, the board of directors met and adopted a resolution concerning, among other things, the salary and duties of the officers. The pertinent parts of the resolution, as amended by a meeting on June 27, 1953, are as follows: (1) $720.00 per month for each associate: (A) If anyone takes a job out of town or becomes inactive and is unable to perform work, those members are to receive $455.00 per month or percentage wise 63% of month's salary. Upon an amendment or revision to (A) of the minutes as suggested by Mr. Bowie and Mr. Brasaemle after a *224 lengthy discussion the following was approved to cancel and supercede (A) therefore, until such a time as at a meeting of the board the majority vote of the five board members (or the amount on the board at that time) A-1 shall govern. (A-1) If anyone takes another job outside of Rubber Associates Inc. and is unable to perform work, or becomes inactive his salary would immediately revert back to 63% of salary as established in (C) or (B) of these minutes. (B) If business does not warrant this continuous take, then on each drop a percentage wise cutback of 37% of the sum decided on shall be taken by any individual not performing duties or if that person comes under the control as established in (A-1) of these minutes. For example $600.00 equals #378.00 or a 63% figure of the total. (C) As a guide to the salary use total sales per month ($12000.00) average, optional, take 40% leaving 60% for operating expenses etc., and from the 40% or $4800.00 25% should be set aside for expansion, or reserve, and the remaining 75% should be used for salaries. (D) No one designated as head, as the five men to be on an equal basis. (a) Mr. Bowie is to head up manufacturing and to have charge *225 of the factory workers, policies, instructions, procedures, etc., are to be set by the five associates and he is to relay this wish to the factory workers. On May 3, 1953, the board of directors again met and adopted the following resolution: Rubber Associates Inc., was incorporated March 1, 1953 with a potential stock per value of $2500.00 however there were only 25 shares issued with five shares each of $100.00 to five stockholders. A total of $2500.00 was the original decided investment. Stock was to be secured only on an equal basis with a valuation of $100.00 per share, and no one person can hold more shares than the other directors. In case of anyone wanting to withdraw he can sell his stock only back to the Corporation to the remaining members, on the basis of current value of said stock on profit and loss statement at the end of the month, 30 days prior to date of offer to sell. These same conditions to apply in case of death, where the widow or beneficiary wants to sell. However, if they decide to retain stock, same provisions remain theirs in regard to board of directors, bonus, pay, etc., on scale set to cover active and nonactive members. However, a widow shall not *226 become an active member of the organization. The list of the five incorporators and offices they agreed to hold, with no one person holding a superior position was as follows: President
H. D. Glass
Vice President
H. G. Bowie
Vice President
E. C. Brueggeman
Secretary
T. E. Brouse
Treasurer
R. O. Brasaemle
Each of the Incorporators was to hold a seat on the board of directors and each to receive a stock certificate for each $100.00 invested. The members were all to hold equal shares, namely five each for original investment, all other stock sold was to be to the five members only on an equal basis. Stock cannot be sold to anyone except the five Incorporators or widow of same if such is the case. Glass died on November 16, 1956, and Bowie died on May 14, 1957. On July 27, 1957, Brasaemle, Brueggeman and Brouse held a directors meeting. The minutes stated that: (3) Preliminary discussion, on reasonable length of time widows of Mr. H. D. Glass and Mr. H. G. Bowie were to be paid. Mr. Brasaemle and Mr. Brueggeman were to work on analysing the situation. On May 16, 1958, Brasaemle, Brueggeman and Brouse held a directors' meeting. The minutes stated in *227 part as follows: (4) Results of Mr. Bowman's research and review was presented by Mr. Brouse in regards to a reasonable length of time a widow of a deceased director should be paid the 63 percent salary setup, and the following decision was reached, and voted on unanimously by the members to be inserted, applying if the stock is maintained by the widow. Resolution as follows, "A widow, who prefers to retain her deceased husband's stock in the Company shall receive a salary for a period of 18 months on the percentage basis set for an inactive member during that time excluding month of expiration. However, if stock is sold back into the Company before this period of time, salary shall cease at the end of month sale is consummated. This period, we feel is a reasonable period of time, and set this as a limited period of time to apply to all past and future incidents of this nature, or its equivalent regarding inactivity." (5) Mrs. Glass and Mrs. Bowie to be advised in letter of action taken. From January 1, 1956, through August 28, 1958, petitioner's officers were paid $1,350 per month plus a bonus. Due to ill health for sometime prior to his death, Glass's salary was based on the *228 proportion of time he was able to devote to his duties. However, Glass did receive his full bonus up to the time of his death. During the calendar years 1957 and 1958 [1] petitioner paid Mary Ellen Glass (hereinafter referred to as Mary), the widow of Glass, the respective amounts of $15,570 and $6,520. [2] The foregoing amounts were paid over a period of 18 months. On May 28, 1958, Glass's stock was sold to petitioner. Prior to his death, Bowie's authorized salary of $1,350 per month had been paid on a split basis. The sum of $850 per month had been paid by petitioner on a semi-monthly basis and the sum of $500 per month had been paid on a monthly basis by the Neo-Sil Division (hereinafter referred to as Neo-Sil) of petitioner. Prior to his death in 1957, Bowie had received *229 four and one-half months' salary from petitioner and four months' salary from Neo-Sil. In addition, he received the sum of $2,870 in bonuses out of a total of $5,370 authorized and paid to each officer in 1957. During the calendar years 1957 and 1958, petitioner paid Katie Bowie (hereinafter referred to as Katie), the widow of Bowie, the respective amounts of $9,032.50 and $10,387.50. [3] The amount paid directly by petitioner was over a period of 18 months. Neo-Sil made only 16 monthly payments. The remaining two payments that were to be made by Neo-Sil were assumed by Brasaemle on August 28, 1958, when he resigned as an officer and director of petitioner, sold his stock in petitioner and purchased the assets of Neo-Sil. As a further result of the Neo-Sil sale, Katie negotiated with petitioner for the sale of her stock. On September 2, 1958, Katie surrendered her stock to petitioner. *230 Neither Mary nor Katie performed any services on behalf of the corporation during any of the years in issue. In its Federal income tax returns for 1957 and 1958, petitioner deducted the amounts paid to Mary and Katie as compensation to officers. Respondent disallowed the claimed expenses stating that "Since no services were rendered to the corporation by these individuals and the payments to them were contingent upon the ownership of the company's stock, the payments are not ordinary and necessary and thus not deductible under section 162 of the Internal Revenue Code." Petitioner contends that the payments to the widows are deductible under section 162(a)(1) of the 1954 Code [4] as ordinary and necessary business expenses. Petitioner relies on that part of section 39.23(a)-9, Regs. 118, which states: "When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted." Petitioner relies on McLaughlin Gormley King Co., 11 T.C. 569 (1948); I. Putnam, Inc., 15 T.C. 86 (1950); and Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959), *231 affd. in part and reversed in part on other issues 281 F. 2d 556 (C.A. 2, 1960) certiorari denied 366 U.S. 964 (1961), to support its contention. Petitioner also contends that the payments are deductible because the widows could have sustained legal actions to enforce payment.
We are unable to agree with petitioner. By express provision of the Code, [5] deductibility of payments under a deferred payment plan is limited to section 404(a). Since the payments herein were not paid under a stock bonus, pension, profit-sharing, or annuity plan, as included in section 404(a)(1), (2) or (3), they are deductible, if at all, only under section 404(a)(5). [6] To be deductible under section 404(a)(5), it is necessary that such payments satisfy the provisions of section 162. *232 Petitioner appears to be laboring under the erroneous notion that the mere fact of payments for a limited time will suffice to satisfy the provisions of section 162. All payments by a corporation are not deductible. Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); New Colonial Co. v. Helvering, 292 U.S. 435 (1934). To prevail, it is incumbent upon petitioner to show that the payments were ordinary and necessary and that they were proximately related to its business. Petitioner has failed to make any such showing in this case. Even if we assume that the Regulations under the 1939 Code are applicable herein, [7] there is no evidence that the payments were in recognition of past services rendered by the decedents. Cf. Fifth Avenue Coach Lines, Inc., supra; Lucas v. Ox Fibre Brush Co., 281 U.S. 115 (1930). Nor is there any evidence that these payments were additional compensation in connection with an employment contract. Cf. Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198 (1940). It is doubtful that these payments could have been an incentive to other officers or employees. Cf. Fifth Avenue Coach Lines, Inc., supra. *233 The only officers were shareholders and under the terms of their agreement they would receive 63 percent of their salary even if they performed no services. Other employees could not have been influenced by these agreements because none were covered. The payments obviously could not have been compensation to the widows because they performed no services. Finally, there is no evidence that the payments in question were made as death benefits. We are led inescapably to the conclusion that the payments in question *234 were distributions of profits and not deductible expenses. Barbourville Brick Co., 37 T.C. 7 (1961). There is no evidence to indicate that the payments were made for any other reason than because of stock ownership. Consequently, the payments were dividends and not ordinary and necessary business expenses. Section 316, 1954 Code. Petitioner's case is not aided by the fact that there may have been some actionable obligation enforceable by the widows. The declaration of a dividend also creates a debtor-creditor relationship and also creates an actionable obligation. See Mark G. Anton, 34 T.C. 842 (1960), affd. 292 F. 2d 478 (C.A. 3, 1961), certiorari denied 368 U.S. 967 (1962). Decision will be entered for the respondent. Footnotes
1. Petitioner also made one payment of $850 in 1956 to Mary Ellen Glass. This amount is not in controversy herein. ↩
2. Petitioner computed the amounts paid to Mary as follows: ↩
Year
1957
63% X $1,350 (salary per month)
X 12 (months)
$10,200
Officer's Bonus
5,370
$15,570
1958
63% X $1,350 (salary per month)
X 5 (months)
$ 4,270
Officer's Bonus
2,250
$ 6,520
3. Computed by petitioner as follows: ↩
Year
1957
63% X $850 (salary per month)
X 7 1/2 (months)
$ 4,012.50
63% X $500 (salary per month)
X 8 (months)
2,520.00
Balance of officer's bonus
2,500.00
$ 9,032.50
1958
63% X $850 (salary per month)
X 10 1/2 (months)
$ 5,617.50
63% X $500 (salary per month)
X 8 (months)
2,520.00
Officer's Bonus to August 28,
1958
2,250.00
$10,387.50
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩
5. Cf. also section 1.404(a)-1, Income Tax Regs.↩
6. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.↩
7. A provision similar to section 29.23(a)-9, Regs. 118, is contained in Income Tax Regs., section 1.404(a)-12 which provides as follows: "Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * *" See also T.D. 6091↩, 1954-2 C.B. page 47, concerning the applicability of the 1939 regulations to years governed by the 1954 Code.