Oppenheimer Casing Co. v. Commissioner.
Oppenheimer Casing Co. v. Commissioner
Docket No. 95397.
United States Tax Court
T.C. Memo 1963-216; 1963 Tax Ct. Memo LEXIS 128; 22 T.C.M. (CCH) 1082; T.C.M. (RIA) 63216; August 15, 1963
Walter J. Rockler, for the petitioner. Seymour I. Sherman, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent has determined deficiencies in the income tax of the petitioner for the indicated years as follows: Year
Deficiency
1958
$6,032.32
1959
9,692.20
The only issue for determination is the correctness of the respondent's action in disallowing deductions taken by petitioner in the respective years for amounts paid to the widow of a deceased president of petitioner. Findings of Fact Some of the facts have been stipulated and are so found. The petitioner is a Delaware corporation organized in 1926 and has its principal office and place of business in Chicago, Illinois. It filed its Federal corporation income tax returns for the years *129 1958 and 1959 on an accrual basis with the district director in Chicago, Illinois. During the years in issue the petitioner was and presently is engaged in the business of importing, exporting, processing, and otherwise dealing in natural casings used in the production of sausages and related products. In 1958 and to the present, petitioner has had an average total of approximately 300 employees at its various plants in the United States and, through a number of subsidiary corporations, an average total of approximately 500 or 600 employees at various plants located outside the United States. Harry D. Oppenheimer died in Chicago, Illinois, on October 31, 1953, and left surviving him his widow, Ida R. Oppenheimer, and their two sons, Edward H. Oppenheimer and Seymour Oppenheimer. Harry D. Oppenheimer founded the business conducted by petitioner and after the organization of petitioner in 1926 served petitioner as president until 1949 and thereafter as, chairman of petitioner's board of directors until his death in 1953. For the 5 years preceding his death, his salary was at a rate in excess of $60,000 per year and for the year 1953 his salary was at the rate of $62,500 per year. *130 In recognition of his long and faithful service, the board of directors of petitioner, by resolution duly adopted December 2, 1953, authorized the petitioner to pay to Ida R. Oppenheimer the sum of $50,000 in monthly installments over a period of 2 years and in the event she should die prior to the time when the entire $50,000 had been paid to her, the remaining balance of the $50,000 should continue to be paid in monthly installments to the heirs-at-law of Harry D. Oppenheimer. Pursuant to the foregoing resolution, the petitioner paid to Ida the sum of $25,000 in 1954 and a like sum in 1955. Vincent M. Jenkinson died at Hinsdale, Illinois, on August 6, 1954, and left surviving him his widow, Florence Jenkinson of LaGrange, Illinois. At the time of his death he was the secretary and chief accountant of the petitioner. For the 4 years preceding his death, his salary, including bonus, had been at an average rate of $15,066.60 per year. For 1954, his salary, not including bonus, was at the rate of $14,260 per year. On August 25, 1954, Edward H. Oppenheimer, president of petitioner, informed Florence Jenkinson that in recognition of the many years of service her deceased husband had *131 rendered the petitioner, the directors of petitioner had decided to pay to her the sum of $12,000. Pursuant to such decision and instructions received from Florence Jenkinson relating to the dates of payment of the $12,000, the petitioner paid her $6,000 in 1954 and $6,000 in 1955. In addition, the petitioner continued Jenkinson's salary for a period after his death, paying during such time to his estate out of petitioner's regular salary account the amount of $2,611.16. Edward H. Oppenheimer, sometimes hereinafter referred to as Edward, died suddenly in his office at the petitioner's principal place of business in Chicago, Illinois, on April 8, 1958, at the age of 46 years. He had been in the employment of petitioner since 1932 and during the following periods served in the indicated offices: Period
Office
1936-1940
Assistant secretary
1940-1943
Vice president and
assistant secretary
1943-1949
Vice president, assist-
ant secretary, and
assistant treasurer
1949-1954
President and assist-
ant treasurer
1954-1958
President He had been the chief executive officer of the petitioner since 1949 and a member of petitioner's board of directors from *132 1942 until the time of his death. During each of the years 1950 through 1956, he received a salary in the amount of $35,000 and, except in 1953 when no bonus was paid, a bonus in the amount of $7,500. In 1957 he received a salary in the amount of $40,000 and a bonus of $7,500. His salary for 1958 had been set at $40,000 per annum. At the time of his death, the books of petitioner did not reflect any additional amounts due or payable to him for services rendered. During the 10-year period preceding the death of Edward, Harry D. Oppenheimer and Vincent M. Jenkinson were the only officers of petitioner who died while in office. No officer of petitioner has died in office since the death of Edward. At the time of his death Edward left surviving him his widow, Florine G. Oppenheimer, and the following children of the indicated ages: Children
Age
Edward H. Oppenheimer, Jr.
20 years
Harry D. Oppenheimer
17 years
James K. Oppenheimer
14 years
Upon the death of Edward, the remaining members of the board of directors of the petitioner were Seymour Oppenheimer, brother of Edward, Frank Greenberg, and Ida R. Oppenheimer, mother of Edward. Ida R. Oppenheimer died in *133 1960. Seymour Oppenheimer has been associated with the petitioner since 1926 and during the following periods served in the indicated offices: Period
Office
1928-1933
Assistant secretary
1936-1941
Vice president and
assistant secretary
1941-1946
Vice president and
secretary
1946-1949
Vice president, secre-
tary, and assistant
treasurer
1949-1958
Vice president and
treasurer
1958-1963
Chairman of the board
of directors and
treasurer He has been a director of petitioner continuously since 1932 and became chairman of the board of directors in 1958 following Edward's death. Frank Greenberg has been secretary of the petitioner since August 19, 1954, following the death of Vincent M. Jenkinson, heretofore referred to. Greenberg has been a member of the board of directors since May 25, 1955. The board of directors of petitioner, then consisting of Seymour Oppenheimer, Ida R. Oppenheimer, and Greenberg, held a meeting on April 13, 1958, at which each of them was present. At the meeting, the directors, with the dual objective of paying additional compensation for the valuable services rendered to it by Edward during the period of 26 years *134 prior to his death and of providing his widow, Florine Oppenheimer, with some economic security following Edward's death, authorized the payment by petitioner to her of $40,000 in monthly installments over a period of 2 years with the proviso that any unpaid installments (except those already accrued) should lapse in case of her death. At the meeting of the directors of petitioner on April 13, 1958, William D. Berger was elected president of petitioner and a member of its board of directors. His salary was set at $35,000 per annum and subsequently he was voted a bonus of $5,000 for 1958. Immediately following the directors' meeting, Berger was installed as president of petitioner. At or about the same time, Herbert R. Strauss also was elected a director. At a meeting of the petitioner's board of directors held on April 20, 1958, at which Seymour and Ida R. Oppenheimer, Greenberg, Berger, and Strauss were present, the minutes of the directors' meeting held on April 13, 1958, including the portion thereof authorizing the payment of $40,000 to Florine Oppenheimer, were read and approved. Subsequently and at the annual meeting of the stockholders of petitioner held in September 1958, *135 the action of the board of directors of petitioner in authorizing the payment of $40,000 to Florine was presented to and was approved by the stockholders. Florine Oppenheimer had never participated in the affairs of the petitioner and had never rendered any service to it. Pursuant to the authorization by petitioner's board of directors on April 13, 1958, of a payment of $40,000 to Florine Oppenheimer, the petitioner, beginning May 1, 1958, made payments thereof to her as follows: Year
Amount
1958
$13,333.36
1959
20,000.04
1960
6,666.68
Total
$40,000.08
The petitioner had no contractual obligation to make the foregoing payments and was not indebted to Edward in any pecuniary amount at the time of his death. No withholding tax, F.I.C.A. tax, or other payroll deductions were withheld from the payments. The petitioner filed with respondent information returns, Forms 1099, for 1958, 1959, and 1960 reporting the payments made in the respective years. In its income tax returns for 1958 and 1959, the petitioner deducted as salaries and wages the above amounts paid in those years to Florine Oppenheimer. The petitioner's affairs and operations are a complicated *136 business and normally impose considerable responsibility on its president. At the time of Edward's death and for some time prior thereto, the petitioner's operations had not gone too well and resulted in added responsibility being imposed on Edward. The payments made by petitioner to Florine following the death of Edward were reasonable in amount and in period of payment. During the period 1953 through 1959, the petitioner paid no dividends in the years 1953, 1954, 1955, and 1958, paid dividends of 25 cents per share in 1956 and 1957, and paid dividends of $1.67 per share in 1959. Of the total number of shares of stock in petitioner outstanding on April 30, 1958, Ida R. Oppenheimer owned approximately 4 percent; Seymour Oppenheimer, less than 1 percent; William D. Berger, less than one-fifth of 1 percent; Frank R. Greenberg, none; Herbert R. Strauss, none; Florine Oppenheimer, approximately 3 percent; and trusts, of which Seymour Oppenheimer, Frank R. Greenberg, and Herbert R. Strauss were trustees, approximately 34 percent. In determining the deficiencies in issue, the respondent disallowed the deductions taken by petitioner in its returns for the payments made by it to Florine *137 Oppenheimer in 1958 and 1959, stating that petitioner had "not established that they [the payments] constitute ordinary and necessary expenses within the meaning of section 162 of the Internal Revenue Code of 1954." Opinion The respondent takes the position that the dominant reason for the directors of petitioner authorizing the payment by petitioner of an amount of $40,000 to Florine was to cause the petitioner to make a gift and that therefore no part of the amount constituted a deductible expenditure by the petitioner. From our consideration of the record as a whole, we are not able to sustain the respondent's position. In our opinion the record amply supports our finding that the directors of the petitioner, with the dual objective of paying additional compensation for the valuable services rendered by Edward to petitioner during the period of 26 years prior to his death in 1958 and of providing his widow Florine with some economic security following Edward's death, authorized the payment to her of $40,000 in monthly installments over a period of 2 years. The record is clear that except for the services rendered by Edward the directors of petitioner *138 never would have considered making any payment to Florine. The respondent further contends that the payments of the $40,000 were not proximately and reasonably related to the business of the petitioner. Although it is true that the record discloses that the directors of petitioner did not anticipate that the payments would be productive of any future business for the petitioner, the fact that the payments were in part as additional compensation for the services rendered to petitioner by Edward, reasonably and proximately relates them to the business of petitioner. The respondent, relying on Lengsfield v. Commissioner, 241 F. 2d 508 (C.A. 5, 1957), and Barbourville Brick Co., 37 T.C. 7 (1961), contends that we should conclude that the petitioner's payments to Florine were in fact dividends and not deductible by petitioner. In the Lengsfield case the recipients of the payments in controversy were majority (63 percent) stockholders of the paying corporation, and in the Barbourville case the recipient of the payments held more than 93 percent of the stock of the paying corporation. Here, Florine owned approximately 3 percent of the stock of the petitioner. *139 The evidence is clear that she did not participate in the affairs of the petitioner, that she did not seek or promote the authorization of the payments to her, and that the authorization of the payments was unexpected on her part. In view of the foregoing, the cases here relied on by respondent, because of their factual differences, are inapplicable here. In our opinion, the rationale of Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959), reversed on another issue, 281 F.2d 556 (C.A. 2, 1960), certiorari denied 366 U.S. 964 (1961); Peters v. Smith, 221 F. 2d 721 (C.A. 3, 1955); and I. Putnam, Inc., 15 T.C. 86 (1950), is applicable here and accordingly we hold that the amounts paid by petitioner to Florine during the years in issue were deductible by petitioner as ordinary and necessary business expenses. Because of uncontested adjustments in the notice of deficiency, Decision will be entered under Rule 50.