LOEWY DRUG COMPANY OF BALTI-
MORE CITY

v.

UNITED STATES of America.

Civ. No. 12388.

United States District Court
D. Maryland.

Aug. 7, 1964.

John S. McDaniel, Jr., Baltimore, Md. (Cable & McDaniel, Baltimore, Md., on the brief), for plaintiff.

Moshe Schuldinger and John M. Hammerman, Attys., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., and Robert W. Kernan, Asst. U. S. Atty., Baltimore, Md., on the brief), for defendant.

THOMSEN, Chief Judge.

This is an action to recover income taxes alleged to have been erroneously and illegally collected from plaintiff, Loewy Drug Company of Baltimore City (Loewy Drug). The specific issue is whether certain payments which Loewy Drug made in 1956 and 1957 to Lallah R. Pierpont, widow of its president and majority stockholder, Mervin G. Pierpont, were deductible by it under sec. 404(a), I.R.C.1954, 26 U.S.C.A. § 404 (a).[1] The taxability to the widow of those payments was considered in Poyner v. C. I. R., 4 Cir., 301 F.2d 287 (1962),

---

1. The provisions of sec. 404(a) are set out below under the heading "Relevant Statutes and Regulations".

but different statutes and tests are applicable in this case.[2]

### Facts

The basic facts are stipulated. The only factual dispute is about the motive or motives for the payments.

Loewy Drug was incorporated under the laws of Maryland in 1907 and was dissolved on December 30, 1957. At all relevant times it had outstanding 750 shares of $100 par value capital stock.

Mervin G. Pierpont was its president for 38 years before his death on January 31, 1956. He owned 500 shares of the stock; the remaining 250 shares were owned by Morton L. Lazarus, a vice-president of Loewy Drug. Pierpont's salary at the time of his death was $20,000 a year. Loewy Drug had paid him all amounts due for services rendered up to that time, and was not legally obligated to pay anyone any amount as compensation for the services he had rendered.

Pierpont was survived by his wife, Lallah, and by three children of a former marriage. His will set up two trusts for the benefit of his wife during her lifetime, with various powers and remainders. After Pierpont's death and until the dissolution of Loewy Drug, the executors of his estate, Ernest L. Poyner and Union Trust Company of Maryland, held title to the 500 shares of stock. Poyner was a vice-president of Union Trust in charge of the Estate Planning Division of its Trust Department.

On March 22, 1956, Mrs. Pierpont, Lazarus, Poyner, Knieriem, who was a Trust Officer of Union Trust, and William M. Pierpont, Mervin's son, were elected directors of Loewy Drug. William had been a vice-president of the corporation, and on March 22 the directors elected him president at a salary of $275 per week. Mrs. Pierpont had been secretary-treasurer, and was reelected to those offices. She was paid a salary of $77 per

week for her services during 1956 and 1957. The minutes of the directors' meeting on March 22, include the following:

"Consideration also was given to the continuation of salary payments to the widow of Mervin G. Pierpont and was deferred pending completion of audit and consideration of audited statements. The following resolution was adopted by the Board:

"RESOLVED: That in recognition of the services rendered by the late Mervin G. Pierpont, this Corporation pay to his widow as a continuance of his salary the sum of Three Thousand Two Hundred Forty-Five Dollars and Fourteen Cents ($3,245.14); such amount to be paid by transferring to her the 1954 Cadillac automobile now owned by this Corporation, plus $64.91 to cover transfer costs, and that further consideration be given this matter by this Board of Directors after the audited statement is available."

At a meeting held on April 27, 1956, the directors adopted the following resolution:

"RESOLVED: That in addition to the sum of $3,310.05 paid pursuant to the Resolution adopted at the meeting of this Board on March 22, 1956, this Corporation pay to the widow of the late Mervin G. Pierpont as a continuation of his salary the sum of $600.00 per month commencing with the month of February, 1956 and continuing until further action of this Board or until such monthly payments aggregate the sum of $20,000.00, whichever shall first occur, this Board reserving the right to terminate said monthly payments at any time."

Based on the testimony of the directors, the Court finds: that in authorizing the payments to Mrs. Pierpont the directors considered her need for a car

---

2. The Fourth Circuit remanded the Poyner case to the Tax Court for proceedings not inconsistent with its opinion, but the case was settled before a decision was rendered by the Tax Court.

and her financial needs, which were serious because she was not receiving any income from the trusts set up under her husband's will and had no income from other sources; that her needs were the dominant if not the sole motive and reason for the adoption of both resolutions; and that no benefit to the corporation was contemplated or derived.[3]

The payments were not made pursuant to any contract, plan, policy, practice or understanding made, adopted or in effect prior to the death of Mervin Pierpont, and did not constitute additional compensation for services rendered by Mervin Pierpont.[4]

Pursuant to the resolutions Loewy Drug made payments to Mrs. Pierpont during the years 1956 and 1957 aggregating $9,910.05 and $7,800, respectively. The amounts so paid were deducted by the corporation on its federal income tax returns for those years as expenses of doing business, under the caption "Payment to Widow of Deceased Officer". The amounts paid by Loewy Drug to Mrs. Pierpont pursuant to the resolutions of March 22 and April 27, 1956, represented the only payments ever made by the corporation to a widow of a deceased employee.

During the summer of 1956 the directors gave serious thought to selling the stock or assets of Loewy Drug. Some time prior to April 12, 1957, they negotiated a sale of its inventory, stock-in-trade, furniture and fixtures to District Wholesale Drug Corporation, of Washington, D. C. On April 12, 1957, the directors and stockholders approved the sale and authorized the liquidation of Loewy Drug. Thereafter all the assets which had not been sold were liquidated and distributed to the stockholders.

On December 30, 1957, the directors terminated the payments to Mrs. Pierpont and dissolved the corporation.

As a result of an audit of Loewy Drug's income tax returns for 1955, 1956 and 1957, additional income taxes and interest for the years 1955 and 1956 were assessed and paid. The basis for the assessment was the disallowance of the deductions for payments made to Mrs. Pierpont in 1956 and 1957.[5] Timely claims for refund were filed on September 14, 1959. These claims were disallowed by the District Director on April 22, 1960, and the instant suit for refund was timely filed.

### The Relevant Statutes and Regulations

Internal Revenue Code of 1954 (26 U.S.C.A.):

"§ *162. Trade or business expenses*

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

"(2) traveling expenses  *  *  *

"(3) rentals  *  ·*  *."

---

3. The testimony of Poyner, Mrs. Pierpont and William Pierpont shows clearly that a business purpose was not a dominant motive with them or with Lazarus. Indeed, they testified that the widow's needs were the sole motive. William Pierpont frankly testified that he voted for the payments to "keep her off my back". Knieriem testified that he was motivated by two reasons in voting for the resolutions: (1) Mrs. Pierpont's need of a sustaining income, and (2) the many years of faithful service by Mervin Pierpont on behalf of the corporation; and that the first was the pre-

dominant reason. On another occasion he intimated that a failure to do something for the widow might have had a damaging effect on the reputation of the company. He was unable to specify what damage he feared, and the Court finds that no business purpose was an effective motive for Knieriem's vote.

4. Loewy Drug does not suggest that the payments represented compensation for services rendered by Mrs. Pierpont.

5. A net operating loss in 1957 permitted a carryback.

"§ *404. Deduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan*

"(a) *General rule.*—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year:

"(1) *Pension trusts.*— * * *

"(2) *Employees' annuities.*— * * *

"(3) *Stock bonus and profit-sharing trusts.*— * * *

" * * * * * *

"(5) *Other plans.*—In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

" * * * * * *

"(b) *Method of contributions, etc., having the effect of a plan.*—If there is no plan but a method of employer contributions or compensation has the effect of a stock bonus, pension, profit-sharing, or annuity plan, or similar plan deferring the receipt of compensation, subsection (a) shall apply as if there were such a plan. * * *"

Treasury Regulations on Income Tax, 1954 Code (26 C.F.R.):

"§ *1.404(a)–12 Contributions of an employer under a plan that does* not meet the requirements of section 401(a); application of section 404(a) (5).

"Section 404(a) (5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4), or (7) of such section. * * * Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a) (5) in any case when they are not deductible under the other paragraphs of section 404(a). * * *"

Note. Sec. 1.404(a)–5 deals with the matters covered by its heading: "Pension and annuity plans; limitations under section 404(a) (1) (B)".

*Discussion*

■ 1. The payments in question were not deductible under sec. 162(a) (1) of the 1954 Code, quoted above, as "salar[y] or other compensation for personal services actually rendered." Mervin Pierpont had been paid the full amount of his salary for all services he had rendered the corporation up to the date of his death. Loewy Drug was under no legal obligation to pay him, his estate or his widow any additional compensation. The fact that the resolutions stated that the payments were made as a continuation of his salary in recognition of his services is not sufficient by itself to show that the payments were compensation for services rendered, in the face of the facts found by the Court. Poyner v. C. I. R., 301 F.2d at 291–292.

2. The payments were not made pursuant to any contract, plan, policy, practice or understanding made, adopted or in effect prior to the death of Mervin Pierpont. They were therefore not deductible under sec. 404(a) (1), (2) or (3) of the 1954 Code.

3. Loewy Drug contends, however, that the payments were deductible under sec. 404(a) (5) of the Code, quoted above, as interpreted or amplified by the quoted portions of sec. 1.404(a)–12 of the 1954 Regulations. It argues that the payments were made to Mrs. Pierpont in recognition of the services rendered by Mervin Pierpont, as a continuation of his salary; that the payments were "amounts * * * paid as a death benefit to the beneficiary of an employee", and that the words in the Regulation, "if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a) (5) * *" mean that "the Plaintiff [Loewy Drug] is entitled to deduct under Section 404(a) the amounts which it paid Mrs. Pierpont as a widow's pension *in recognition of Mr. Pierpont's services* if it would have been entitled to deduct the same amounts under Section 162 *if they* had been paid to Mr. Pierpont *as additional compensation*." (Emphasis in plaintiff's brief).[6] This contention begs the question at issue, the meaning of the applicable statute and regulation.

It should be noted that the words relied on by plaintiff—"in recognition of the services rendered"—appeared in Treasury Regulation 118, promulgated under the 1939 Code, and do not appear in the Regulations promulgated under the 1954 Code, which govern the instant case. Sec. 39.23(a)–9 of T.R. 118 provided in part: "When the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted." This provision first appeared in T.R. 45 under the Revenue Act of 1918 and had been continued without change in subsequent Regulations under the 1939 Code. Following the adoption of the 1954 Code, however, this provision was omitted from sec. 1.162 of the 1954 Regulations, which deals with business expenses, apparently because such payments are now deductible, if at all, under sec. 404(a) (5) of the 1954 Code.[7]

Sec. 404 of the 1954 Code deals with "[d]eduction for contributions of an employer to an employees' trust or annuity plan and compensation under a deferred-payment plan". Where such a plan is in effect, the business purpose of payments made thereunder is clear, i. e. to serve as deferred compensation for services rendered and as an incentive to the officers and employees covered by the plan. Payments made to widows where no such plan is in existence may or may not serve a business purpose. Accordingly, sec. 1.104(a)–12 of the applicable 1954 Regulations requires that to be deductible under sec. 404(a) (5), the amounts "paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period)" must "meet the requirements of section 162 or 212". In this case, that means the requirements of sec. 162(a), because Loewy Drug concedes that sec. 212 and the other subsections of sec. 162 are not applicable.

Expenses are deductible under sec. 162 (a) of the 1954 Code only if they are "ordinary and necessary". Sec. 1.404 (a)–12 of the Regulations requires that the proposed deductions must satisfy the "ordinary and necessary" requirements of sec. 162(a), as well as the requirement that they be reasonable. Rubber Associates, Inc., 22 T.C.M. 567, 569–570 (1963).

Sec. 162(a) provides that the term "ordinary and necessary expenses" shall include certain items, listed in paragraphs (1), (2) and (3) of that subsection, such as salaries, other compensation, and certain traveling expenses, rentals, etc. The Court has found that the payments in question are not salary or other compensation for personal services covered by

---

6. No reliance is placed on the reference to sec. 212, which is concededly irrelevant in this case.

7. For a discussion of the change in the Regulations, see Barbourville Brick Co., 37 T.C. 7, 12, 15, 19.

paragraph (1); obviously they are not expenses of the types covered by paragraphs (2) and (3). The Court is willing to assume, without deciding, that to be deductible by Loewy Drug under sec. 404(a) (5), as interpreted by T.R. sec. 1.404(a)–12, the payments need not have been in the nature of additional compensation. But Loewy Drug must show that they were both ordinary and necessary.

The government concedes that an expense may be ordinary, although it is unique to the taxpayer, if it is common to the business community of which it is a part. Interstate Drop Forge Co., 22 T.C.M. 701, 703 (1936). Payments such as those under consideration are ordinary.

But for an expense to be necessary, it must be shown both (1) that there are business ends to be served, and (2) that there was an intention to serve those business ends, by means of the questioned expenditure. Interstate Drop Forge Co., 22 T.C.M. at 703. See also Welch v. Helvering, 290 U.S. 111, 113, 54 S.Ct. 8, 78 L.Ed. 212. No payments to widows, such as those involved in this case, may properly be considered "necessary" expenses unless some business purpose motivated the directors; granted that to meet the requirement of sec. 162(a), it is not necessary that such purpose be the payment of additional compensation for services rendered; it is sufficient if the payments are made as an incentive to the other officers or employees, in order to improve their morale or otherwise benefit the corporation. Barbourville Brick Co., 37 T.C. 7, 12, 15, 16–22.

In the instant case, however, the Court has found as a fact that no such business purpose existed; and that the dominant, if not the sole, reason for the payments was to provide for the financial needs of Mrs. Pierpont, who was the life beneficiary of the trusts which held two-thirds of the stock of Loewy Drug, and was one of the directors who voted for the payments. See Nickerson Lumber Co. v. United States, D.Mass., 214 F. Supp. 87 (1963).[8]

Let judgment be entered for the defendant, with costs.

8. In Oppenheimer Casing Co., 22 T.C.M. 1082 (1963), cited by Loewy Drug, the Commissioner took the position that the dominant reason for the payments was to make a gift to the widow. The Court disagreed, finding that the payments were made with the dual objective of paying additional compensation for the services rendered by the decedent and of providing his widow with economic security. In the case at bar the Court has found that the payments to Mrs. Pierpont were not and were not intended to be additional compensation for the services rendered, but that the dominant if not the sole motive was to care for her needs, since Loewy Drug stock, which was being held in trust for her, was not paying any dividends. Moreover, in the Oppenheimer case the widow owned only 3% of the stock of the corporation.

Fifth Avenue Coach Lines, Inc., 31 T.C. 1080 (1959); C. Doris H. Pepper, 36 T.C. 886 (1961); I. Putnam, Inc., 15 T.C. 86 (1950); Dunn and McCarthy, Inc. v. C. I. R., 2 Cir., 139 F.2d 242 (1943); and Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198 (1940), also cited by plaintiff, are not applicable in this case because all of them were decided under the 1939 Code and Regulations, which did not require that the payments meet the "ordinary and necessary" tests, but allowed deductions for reasonable payments made "in recognition of" services rendered. In all of those cases the payments were made either under a contract or a plan or policy, or for some other business purpose. Cf. McLaughlin, Gormley King Co., 11 T.C. 569, 575 (1948), where the deduction was disallowed.