Willmark Service System, Inc. v. Commissioner.
Willmark Service System, Inc. v. Commissioner
Docket No. 244-64.
United States Tax Court
T.C. Memo 1965-294; 1965 Tax Ct. Memo LEXIS 37; 24 T.C.M. (CCH) 1634; T.C.M. (RIA) 65294; November 5, 1965
*37 Charles L. Kades, for the petitioner. John B. Murray, Jr., and William T. Holloran, for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioner for the year 1959 in the amount of $9,499.29. The issue is whether petitioner is entitled to deduct $18,444 paid by it in 1959 to the widow of a deceased officer-stockholder. Findings of Fact Petitioner is a corporation with its principal office at 250 West 57th Street, New York, New York. Its corporate income tax return for the year 1959 was filed with the district director, Manhattan district, New York. A stipulation of facts and supplemental stipulation of facts filed by the parties are incorporated herein by reference. Petitioner was incorporated under the laws of the State of New York on January 15, 1920. It is a service organization engaged in the business of promoting, developing and directing shopping systems and services and establishing and supervising methods and procedures for the detection and elimination of opportunities for dishonest employee practices in such enterprises. It has approximately 300 employees. It maintains its books and records on a calendar year *38 basis and employes an accrual method of accounting. The founders, principal stockholders and officers of petitioner were two brothers, William Bernstein and Mark Bernstein. (Petitioner's name appears to have been derived from the first names of the two brothers.) At all relevant times the stock of the corporation was owned equally by the families of the two brothers. During the year 1941 the officers, directors and shareholders of petitioner were as follows: No. of
Officer
Title
Shares
Mark Bernstein
President
3
William Bernstein
Secretary-Treasurer
3
Helen Bernstein
Assistant Treasurer
1
Selma Bernstein
Assistant Secretary
1 Helen Bernstein was the wife of Mark Bernstein and Selma Bernstein the wife of William Bernstein. On January 27, 1941, a written agreement was entered into between the petitioner and Mark, William, Helen and Selma Bernstein. Therein, after reciting in the preamble that the continued prosperity and success of petitioner depended entirely upon the services being rendered and to be rendered by Mark Bernstein, its general manager, and by William Bernstein, its service department manager, and their willingness to continue such services as long as they lived and were physically able *39 to perform them; and that they had consented to accept from petitioner salaries and compensation for their services which were wholly inadequate to the services rendered and to be rendered by them and were willing to continue to accept salaries and compensation for such services which were not commensurate with the real value of their services on the terms and conditions thereinafter set forth, the agreement provided, in substance, as follows: That petitioner would employ Mark Bernstein as general manager and William Bernstein as service department manager as long as each of them lived at such salaries as were determined by petitioner's board of directors from time to time; that at all times Mark and William would be paid the same salary; that they would render their respective services to petitioner as long as they lived and were physically capable of performing such services; that in the event of the physical incapacity of either of them to perform such services, petitioner would pay the party incapacitated the same salary as he would be entitled to receive if such incapacity had not occurred; and that in the event of the death of either of them while still in the employ of petitioner, *40 leaving a wife, child or children, petitioner would pay weekly to such wife as long as she lived, and thereafter to such child or children, in equal shares, as long as they lived, an amount equal to 50 percent of the salary thereafter paid to the survivor of Mark and William. On January 27, 1941, Mark Bernstein and William Bernstein were each receiving from petitioner a salary of $600 per week, or approximately $30,000 per year. On February 19, 1953, William Bernstein died leaving his widow, Selma Bernstein; a son, Edward J. Bernstein; and a daughter, Iris Ruth Levy. Subsequent to his death, the officers and shareholders of petitioner were as follows: No. of
Officer
Title
Shares
Mark Bernstein
President
280
Joseph Bernstein *
Executive Vice President
10
Robert Bernstein *
Executive Vice President
10
Edward Bernstein
Secretary-Treasurer
100
Selma Bernstein
Assistant Secretary
100
Helen Bernstein
Assistant Treasurer
100
Trust u/w William Bernstein
200
On or about May 19, 1953, the children of Mark and William Bernstein signed releases in which they waived all of their rights to any payments under the agreement of January 27, 1941. Selma Bernstein, *41 who was approximately 64 years of age in 1953 when her husband died, held the office of assistant secretary of petitioner during the years 1953 to 1959, inclusive. For services rendered by her in this capacity she received from petitioner a salary of $75 per week. Petitioner maintains a group insurance plan for its employees, the cost of which is borne in part by the employees and in part by petitioner. It does not require its employees to retire when they reach the age of 65 and they may continue to work as long as their health permits them to do so. After the death of William Bernstein, petitioner began making payments to the decedent's widow, Selma Bernstein, under the foregoing agreement of January 27, 1941. These payments were equal to one-half of the current salary paid by petitioner to Mark Bernstein, the surviving brother of the decedent and president of petitioner. The annual salary paid by petitioner to Mark Bernstein during the years 1953 to 1959, inclusive, and the amounts paid by petitioner to Selma Bernstein under the foregoing agreement of January 27, 1941, during those years were as follows: Salary paid
Payments to
Year
Mark Bernstein
Selma Bernstein
1953
$39,388.00
$16,910.00
1954
38,692.00
19,346.00
1955
40,192.00
20,096.00
1956
40,192.00
20,096.00
1957
39,692.00
19,846.00
1958
37,192.00
18,596.00
1959
36,888.00
18,444.00
During *42 the years 1953 to 1959, inclusive, petitioner's books and records reflect taxable income and dividend payments as follows: Year
Taxable Income
Dividends
1953
$315,332.58
$104,000
1954
280,199.84
52,000
1955
221,803.96
68,000
1956
126,865.65
56,000
1957
76,768.34
40,000
1958
42,753.78
24,000
1959
53,815.26
19,200
The balance sheet contained in Schedule L of the 1959 corporate income tax return filed by petitioner shows earned surplus and undivided profits of $841,196.54 at the end of that year after distributions of $19,200 to its shareholders. Its total assets at that time were in the amount of $1,001,938.17, of which at least $885,134.76 represented liquid assets, consisting of $349,742.69 cash, $178,073.63 Government obligations, and $357,318.44 notes and accounts receivable. In its income tax return for 1959, petitioner claimed a deduction for the $18,444 paid to Selma Bernstein during that year. The respondent disallowed the claimed deduction and gave the following explanation: It is held that payments to Selma Bernstein aggregating $18,444.00 which you deducted on your return for the taxable year ended December 31, 1959 under Office Miscellaneous expense are not allowable deductions within the purview *43 of Sections 162 or 404 of the Internal Revenue Code of 1954, and the payments have, therefore, been disallowed in full. Selma Bernstein reported the $18,444 received from petitioner in 1959 as income in the income tax return filed by her for that year. Opinion RAUM, Judge: Petitioner contends that the payment of $18,444 to Selma Bernstein during the year 1959, having been made under a deferred compensation plan, is deductible under the provisions of Section 404(a)(5) of the Internal Revenue Code of 1954, [1] *44 and Section 1.404(a)-12, Income Tax Regulations.[2] *45 To be deductible under that section it is undisputed that the payment must satisfy the requirements of Section 162, which allows a deduction for all "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" including a "reasonable allowance" for salary or other compensation for personal services actually rendered. Petitioner argues that the payment to Selma Bernstein in 1959 was made pursuant to a formal and legally binding contract; that the contract had been entered into at arm's length by parties having conflicting interests 12 years prior to William Bernstein's death; that the agreement was intended to retain for petitioner's benefit the services of Selma's deceased husband, William Bernstein, as well as the services of his brother, Mark Bernstein, at salaries not commensurate with the real value of their services, and contained reciprocal provisions for payment to their widows; that *46 the circumstances to be taken into account are those existing in 1941 when it was important to secure William's services on fair and advantageous terms; and that the amount paid to Selma in 1959 represented deferred additional compensation for past services of its deceased officer, William Bernstein. In order to be entitled to a deduction for the 1959 payment made to Selma under the provisions of Section 404(a)(5), petitioner had the burden of proving not only that this payment was made pursuant to a plan deferring the receipt of compensation for past services of her deceased husband, but also that the amounts to be paid under the plan constituted reasonable compensation for such services. We hold that petitioner has failed to carry its burden of establishing either of these conditions. 1. We are wholly unconvinced that the payments in question were intended to represent deferred compensation. Although petitioner argues earnestly that the 1941 agreement was entered into at arm's length, it was at arm's length only in the very limited sense that each brother was interested in obtaining the same arrangement for his wife and children that would be established for the wife and children *47 of the other. However, the record discloses no arm's length bargaining between either brother and the corporation. Mark and William were in full control of the corporation, and it would call for a high degree of naivete to assume that Mark and William together did not call the tune. We are unimpressed by the recitals in the preamble to the 1941 agreement, which appear to be merely window dressing, and we are far from satisfied on this record that the salaries of Mark and William were inadequate or that they were consenting to receive unduly low compensation, or that the corporation was in fact entering into the agreement in order to retain their services. To the contrary, the arrangement entered into, calling for payments during the lives of the surviving wife and children, [3] *48 geared to the future salary of the surviving brother, represents in our judgment a plan of economic family security and not an agreement for deferred compensation. The parties have cited various cases in respect of this issue, but the question is a factual one turning upon the record before us, and no useful purpose would be served by discussing those cases here. We have concluded on this record that the arrangement in issue did not in fact provide for deferred compensation. 2. Even if the 1941 contract in fact provided for deferred compensation rather than payments in a plan of family security, such payments would not qualify on this record as a "reasonable allowance" for salary. Apart from the recitals in the preamble there is nothing before us to suggest that William's annual salary of about $30,000 in 1941 was not commensurate with the value of his services to petitioner, and we have no confidence whatever in those recitals. During the years 1953 through 1959 the payments to Selma totaled $133,334, or an average of approximately $19,000 per year. At the time of the trial in February 1965, she was 76 years of age, and had apparently been receiving additional yearly *49 payments during the period 1960 to 1965 and would continue to receive them during the remaining years of her life. Payments of these substantial amounts for such an indefinite period in the guise or form of additional compensation, in the absence of any evidence that they had a substantial relation to the value of services rendered by the deceased officer, constituted extraordinary and unusual expenditures even though petitioner may have been obligated to make them under an agreement with its officers who owned all of its stock. Botany Worsted Mills v. United States, 278 U.S. 282, 292. [4] *50 On this issue as well, no useful purpose would be served by discussing the cases relied upon by the parties, since the matter is one of fact that must be governed by our appraisal of the record before us. After a careful consideration of all of the evidence, we are not convinced that petitioner has sustained its burden of proving that the payment to Selma in 1959 was made pursuant to any bona fide deferred compensation plan or that it constituted a reasonable allowance for services already rendered, deductible as an ordinary and necessary business expense under Section 162. Respondent did not err in disallowing the claimed deduction. Decision will be entered for the respondent. Footnotes
*. Joseph and Robert Bernstein are the sons of Mark Bernstein.↩
1. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income); but, if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. ↩
2. Sec. 1.404(a)-12, Income Tax Regulations. Contributions of an employer under a plan that does not meet the requirements of section 401(a); application of section 404(a)(5). Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraph (1), (2), (3), (4), or (7) of such section. * * * If unfunded pensions are paid directly to former employees, their rights to such payments are nonforfeitable, and accordingly, such amounts are deductible under section 404(a)(5) when paid. Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a)↩. * * * If an amount is accrued but not paid during the taxable year, no deduction is allowable for such amount for such year. * * *
3. The fact that the children some years later waived their rights under the agreement is irrelevant. The point in this connection is that the agreement was intended to provide payments for a prolonged period measured not only by the widow's life but by the presumably longer remaining lives of the children; and such intention is strongly inconsistent with an intention to pay deferred compensation in the circumstances of this case.
4. In the Botany case, at page 292, the Supreme Court said: * * * it is clear that extraordinary, unusual and extravagant amounts paid by a corporation to its officers in the guise and form of compensation for their services, but having no substantial relation to the measure of their services and being utterly disproportioned to their value, are not in reality payment for services, and cannot be regarded as "ordinary and necessary expenses" within the meaning of the section; and that such amounts do not become part of the "ordinary and necessary expenses" merely because the payments are made in accordance with an agreement between the corporation and its officers. Even if binding upon the parties, such an agreement does not change the character of the purported compensation or constitute it, as against the government, an ordinary and necessary expense.