Donald J. Wallace and Iva M. Wallace v. Commissioner. Guy P. Bert v. Commissioner.
Wallace v. Commissioner
Docket Nos. 4480-65, 4481-65.
United States Tax Court
T.C. Memo 1967-11; 1967 Tax Ct. Memo LEXIS 249; 26 T.C.M. (CCH) 76; T.C.M. (RIA) 67011; January 27, 1967
Walter F. Gibbons and James T. Lodge, 1212 Industrial Bank Bldg., Providence, R.I., for the petitioners. Robert B. Dugan, for the respondent. RAUM
Memorandum *250 Opinion RAUM, Judge: The Commissioner determined deficiencies in income tax for 1962 and 1963 in the amounts of $3,557.50 and $4,249.45 against petitioners Donald J. and Iva M. Wallace (husband and wife) and in the amounts of $3,693.64 and $4,447.19 against petitioner Guy P. Bert. The Wallaces had filed joint returns and Bert separate returns for those years. During the taxable years the male petitioners owned, in equal shares, all of the outstanding stock of The Wallace Co., Inc., a "small business corporation" which had elected, pursuant to section 1372 of the Internal Revenue Code of 1954, to be free of corporate tax and have its undistributed income taxable directly to its shareholders. The deficiencies were based solely upon the Commissioner's disallowance of deductions claimed by the corporation in the amounts of $14,650 and $16,800 which it had paid to the widow of a deceased officer-shareholder during its fiscal years ended June 30, 1962 and 1963. The facts have been stipulated. The Wallace Co., Inc., a manufacturer of emblems and insignia, was organized in 1944 as a Rhode Island corporation. As of December 19, 1953, its issued and outstanding capital *251 stock, consisting of 100 shares of "no par" value, was owned equally by its five officer-stockholders as follows: No. of
Name
Shares
William A. Wallace
20
George A. McCann
20
George W. Bainton
20
Guy P. Bert
20
Donald J. Wallace
20 William A. Wallace was the father of Donald J. Wallace. On December 19, 1953, the corporation entered into an agreement with its officer-stockholders ["parties of the second part"], which provided as follows: WHEREAS the said parties of the second part constitute the entire officers of the said Corporation, and WHEREAS the said Corporation and the aforesaid parties of the second part are desirous of creating a plan for the financial security of their wives in the event of their death, NOW, THEREFORE, in consideration of mutual covenants and agreements entered into by and between the said Corporation and the said parties of the second part, it is agreed as follows: FIRST: That the Corporation does hereby agree that upon the death of any of the aforesaid officers, namely William A. Wallace, George A. MacCann, George W. Bainton, Guy P. Bert and Donald J. Wallace, that the widow of any of the said officers, if she shall *252 survive him, shall receive and the Corporation shall pay to said widow one-half (1/2) of the said deceased officer's yearly salary at the time of his death; said sum to be paid weekly for and during the term of the natural life of said widow, PROVIDED, HOWEVER, that in the event that the salaries of the remaining or surviving officers shall be increased or decreased during the life of said widow, then in that event any payments being made to any widow of a deceased officer shall be increased or decreased in the same proportion, meaning and intending that the widow of any deceased officer shall receive one-half (1/2) of the yearly salary received by any other officer of said Corporation during the term of the said widow's natural life. * * *
William A. Wallace died on July 5, 1957, survived by his widow, Katharine T. Wallace, who died in 1965. George A. MacCann's wife died in 1958 and when he died in 1961, his shares were acquired by Guy P. Bert and his wife as joint tenants. Bert's wife died in 1962 and he has not remarried. Prior to 1962 George W. Bainton surrendered his shares for redemption and thereafter had no further interest in the corporation. Donald J. Wallace appears *253 to have acquired the shares of his deceased father in some manner not disclosed by the record. During the tax years, he and Bert were the sole stockholders, each owning 40 shares. They are unrelated. In accordance with the agreement of December 19, 1953, payments were made to William A. Wallace's widow from 1957 until her death in 1965, equal to one-half the annual salary of the surviving officers. [1] The amounts thus paid through June 30, 1963, were as follows: Fiscal Year Ended
Amount
June 30, 1958
$13,550.00
June 30, 1959
10,380.00
June 30, 1960
10,500.00
June 30, 1961
9,887.50
June 30, 1962
14,650.00
June 30, 1963
16,800.00
Petitioners contend that the payments totalling $14,650 and $16,800 made by The Wallace Co., Inc., in its fiscal *254 years ending June 30, 1962 and 1963 to Katharine T. Wallace, widow of a deceased officer-shareholder of the Company, were properly deducted by the corporation under section 404(a)(5) and section 162 of the Internal Revenue Code of 1954. [2] Payments made under a deferred compensation or pension plan are deductible, if at all, only under the provisions of section 404, which, however, incorporates by reference the conditions of section 162. [3] Thus, in order to establish that The Wallace Co., Inc., was entitled to a deduction under section 404(a)(5), [4] the burden was on the petitioners to prove that the payments to Katharine T. Wallace were for a "business purpose or anticipated economic benefit [to the corporation] * * *; and that such payments were ordinary, necessary, and reasonable in amounts." John C. Nordt, 46 T.C. 431, 443; Interstate Drop Forge v. Commissioner, 326 F. 2d 743 (C.A. 7), affirming a Memorandum Opinion of this Court. *255 Petitioners have sought to discharge this burden by producing a contract entered into on December 19, 1953 between The Wallace Co., Inc., and the five officer-shareholders who owned the company in equal shares at that time. The contract provided that "in consideration of mutual covenants and agreements entered into by and between the said Corporation" and its officers, the corporation would, upon the death of an officer-shareholder, pay his widow a sum equal to one-half of his salary at death every year for the life of the widow, such yearly sum to be increased or decreased proportionately if the yearly salaries of the surviving officers were subsequently increased or decreased. It is not disputed that the payments to Katharine T. Wallace in 1962 and 1963 were made in accordance with the terms of this contract, and we may assume that The Wallace Co., Inc. was under a contractual obligation to make the payments. This fact alone, however, does not make the payments deductible under section 404(a)(5), see Frederick Pfeifer Corporation, 14 T.C. 569, 571, and the absence of any proof as to the economic benefit which the corporation expected to obtain by entering this contract, *256 or any proof that these payments represented reasonable additions to the salaries of the officers for past or future services requires the conclusion that petitioners have failed to sustain their burden of proof on this issue. The contract offered by petitioners states that there are "mutual covenants and agreements" between the parties to support it, yet the body of the contract contains only the unilateral promise of the corporation to provide death benefits to the widows of its deceased officer-shareholders. Nor do petitioners attempt to supply us with any plausible business motive for the corporation's largesse. There is no proof, for example, that the compensation received by these officer-shareholders was inadequate on December 19, 1953, or at any other time before or since. Neither is there any evidence to suggest that the corporation was in serious danger of losing the services of its five officer-stockholders, or any one of them, as was true in the case of Seavey & Flarsheim Brokerage Co., 41 B.T.A. 198, upon which petitioners rely. Though one may search in vain for a corporate business purpose for this death benefit plan, the raison d'etre of the contract *257 is apparent on its very face: one of the WHEREAS clauses states that the officer-stockholders are "desirous of creating a plan for the financial security of their wives in the event of their death." The purpose of the agreement, at least on the basis of what appears in this record, was therefore not to provide an economic benefit to the corporation, but rather to serve the personal needs of the corporation's stockholders. Payments made under such an agreement are clearly not ordinary and necessary expenses of the corporation, and are not deductible as such. Cf. Nickerson Lumber Company v. United States, 214 F. Supp. 87, 90-91 (D.C. Mass. 1963). The situation here closely resembles the factual situation in Willmark Service System, Inc. v. Commissioner, 368 F. 2d 359 (C.A. 2) affirming a Memorandum Opinion of this Court. 24 T.C.M. 1634. In that case, a corporation entered into a contract with its four principal officers, two brothers and their wives who also owned all of the corporation's stock, under which it undertook to pay, upon the death of either brother a weekly sum to his widow, for the rest of her life, and thereafter to his children, *258 as long as they lived, in an amount equal to 50 percent of the salary received by the surviving brother. We considered that there was no arm's length bargaining between either brother and the corporation, that the arrangement entered into was merely a means by which the two brothers provided for the economic security of their families, and that therefore, sums paid by the corporation under the agreement did not represent deferred payment for the services of the deceased brother, nor for any other benefit received by the corporation, and thus could not be considered an ordinary and necessary expense. Furthermore, in the absence of any proof that the salaries being paid to the officers were inadequate, other than recitals to that effect in the contract which, without further proof, we treated as mere "window dressing", we found that even if the contract represented a deferred compensation plan, the corporation did not sustain its burden of proving that the payments made thereunder were reasonable. The Court of Appeals for the Second Circuit, noting that "'it is the Tax Court's function to draw a primary inference from evidentiary facts, which must be sustained on appeal unless it appears *259 wholly unwarranted,' Schner-Block Co. v. Commissioner of Internal Revenue, 329 F. 2d 875, 877," upheld the decision on both grounds. Willmark Service System, Inc. v. Commissioner, supra, at p. 361. We think the inferences to be drawn here are much the same as were drawn from the facts in Willmark. True, we have here five shareholders who entered into a contract with the corporation, and it appears from the record that only two of them were related, as opposed to the two brothers who were in sole control of Willmark. However, this is not a matter of significance. We assumed in Willmark that there might have been arm's length dealing "in the very limited sense that each brother was interested in obtaining the same arrangement for his wife and children that would be established for the wife and children of the other." But we were satisfied that the record showed "no arm's length bargaining between either brother and the corporation", and that since both brothers together controlled the corporation, "it would call for a high degree of naivete to assume that [they] * * * together did not call the tune." Willmark Service System, Inc., 24 T.C.M. 1634, 1637. *260 The situation here is similar, for, although we may likewise assume that the officer-stockholders engaged in arm's length bargaining among themselves, we can find no arm's length bargaining between the corporation and the officer-stockholders. Moreover, as in Willmark, the payments required by the plan were geared to the future salaries of the surviving officers, a factor which we found to be less related to a true deferred compensation plan than to one providing for economic family security. Here there are not even the recitals as to inadequate salary in the past or present which might, if supported by other proof, justify characterizing payments made under the agreement as deferred compensation. Finally, as in Willmark, there is absolutely no proof that the payments to Katharine T. Wallace, even if deferred compensation, represented reasonable compensation for her husband's services. We do not know what services he performed for the corporation, if any, and do not even have any evidence as to the salary he received during his lifetime. All we know from this record is that Katharine T. Wallace received payments under the plan from 1957 until her death in 1965, that those payments *261 totaled $44,317.50 through the corporation's fiscal year ended June 30, 1961, and that the payments of $14,650 made in fiscal 1962 and $16,800 made in fiscal 1963 which the Commissioner has disallowed as deductions brought the total paid to Katharine T. Wallace through June 30, 1963 to $75,767.50. As we said in Willmark Service System, Inc., 24 T.C.M. 1634, 1637): Payments of these substantial amounts for such an indefinite period in the guise or form of additional compensation, in the absence of any evidence that they had a substantial relation to the value of services rendered by the deceased officer, constituted extraordinary and unusual expenditures even though [the corporation] * * * may have been obligated to make them under an agreement with its officers who owned all of its stock. Botany Worsted Mills v. United States, 278 U.S. 282, 292. Decisions will be entered for the respondent. Footnotes
1. The stipulation states that these amounts thus paid to the widow "represent a sum equal to one-half (1/2) of the annual salary paid to the surviving officers * * *". This apparently was intended to indicate that the salaries of the officers were equal, and that the amounts paid to the widow were equal to one-half the salary of one officer. The record shows this to be the case during the two years in issue.↩
2. SEC. 404. DEDUCTION FOR CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for the production of income) but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other Plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. ↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; ↩
4. See Regulations, section 1.404(a)-12: Section 404(a)(5) covers all cases for which deductions are allowable under section 404(a) but not allowable under paragraphs (1), (2), (3), (4), or (7) of such section. * * * Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212↩, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * * [Emphasis supplied.]